IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EVA AREVALO, INDIVIDUALLY      §
AND AS NEXT FRIEND OF E.R.,      §
A MINOR,      §
     §
           Plaintiff,      §
     §
VS.      §      Civil Action No. 3:16-CV-1540-D
     §
CITY OF FARMERS BRANCH,      §
TEXAS, et al.,      §
     §
           Defendants.      §

MEMORANDUM OPINION
AND ORDER

The mother of a teenager shot by a police officer who was residing at an apartment

complex and working as its courtesy officer brings this action under 42 U.S.C. § 1983 and

Texas law, alleging that the officer, the city that employed him, the city's police chief, and

the owner and manager of the apartment complex where the officer resided and worked are

liable on theories of use of excessive force, failure to train, and negligent hiring and/or

retention.  The defendants move to dismiss under Fed. R. Civ. P. 12(b)(6), or for judgment

on the pleadings under Rule 12(c), and the police officer moves to stay the proceedings

against him pending the outcome of a parallel criminal prosecution.  For the reasons that

follow, the court grants the motions to dismiss and for judgment on the pleadings—except

for the police officer's motion to dismiss—and it grants the police officer's motion to stay.

The court dismisses the actions against the apartment complex owner and manager, the city,

and the city police chief, but it also grants the plaintiff leave to amend as to the city and the city police chief.

I

A

This is a lawsuit by plaintiff Eva Arevalo ("Arevalo") brought individually and on behalf of her son E_____ R _____ ("E.R.").[1] The defendants are the City of Farmers Branch, Texas ("Farmers Branch"); the Farmers Branch Chief of Police, Sid Fuller ("Chief Fuller"); Ken Johnson ("Officer Johnson"), who on the day of the shooting was employed as a Farmers Branch police officer; Adara Communities, LLC ("Adara"), the manager of the Brookhaven Apartments, where Officer Johnson resided and worked as a courtesy officer[2]; and Brookhaven Apartments, LLC ("Brookhaven"), the owner of the Brookhaven Apartments.  Arevalo asserts four claims.  In count one, she brings a claim under § 1983 against Farmers Branch, alleging that, through its customs and practices, it has instituted and maintained a policy of police brutality and excessive force that was used against E.R.; that

---

[1]The captions of Arevalo's complaint and amended complaints, several pleadings, and a form of order that the court entered at a party's request contain E.R.'s full name.  Rule 5.2(a)(3) provides, however, that "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party or nonparty making the filing may include only . . . the minor's initials."  Accordingly, the court will refer to E.R. in this memorandum opinion and order by his initials.

[2]According to Arevalo's first amended complaint, "Officer Johnson had been hired/retained by Brookhaven Apartments to provide security services at the Brookhaven Apartments where he resided as a 'courtesy officer[.]'"  Am. Compl. ¶ 19.

Farmers Branch failed to train or discipline its law enforcement officers concerning the use of deadly force or determining whether a suspect is armed and/or poses a threat of serious physical harm to a law enforcement officer; and that Farmers Branch failed to train or inadequately trained its law enforcement officers to render medical care to shooting victims in their custody.  In count two, Arevalo alleges that Officer Johnson is liable under § 1983 for violating E.R.'s Fourth Amendment rights by using excessive force against him.  In count three, Arevalo asserts a claim under § 1983 against Chief Fuller, alleging that he failed to properly train officers employed by the Farmers Branch Police Department ("FBPD") on the constitutionally permissible procedures for the use of deadly force, resulting in the violation of E.R.'s Fourth Amendment rights through the use of excessive force when Officer Johnson shot him.  And in count four, Arevalo brings a claim against Adara and Brookhaven for negligent hiring and/or retention, alleging that they negligently hired and/or inadequately supervised, trained, or retrained Officer Johnson as their employee, agent, and/or servant.

The following facts are taken from Arevalo's first amended complaint ("amended complaint") and are accepted as true for purposes of deciding defendants' motions to dismiss and for judgment on the pleadings.  On March 13, 2016, between 7:00 p.m. and 7:30 p.m., Officer Johnson allegedly observed E.R. and J____ C____ ("J.C.")[3] attempt to burglarize Officer Johnson's personal vehicle while it was parked in the parking lot of the Brookhaven Apartments.  Officer Johnson announced himself as a police officer several times before

---

[3]The court will also refer to the late J.C., another minor, by his initials.  *See supra* note 1.

- 3 -

getting into his vehicle and pursuing E.R. and J.C., who had fled in their own vehicle.  E.R. was 16 years old on March 13.

After ramming the vehicle occupied by E.R. and J.C. and causing it to spin out of control, Officer Johnson exited his vehicle while brandishing his service weapon and identifying himself as a police officer.  Officer Johnson then confronted E.R. and J.C. regarding the alleged burglary of his vehicle.  Without provocation, Officer Johnson used a semi-automatic handgun to fire 17 rounds into the vehicle occupied by E.R. and J.C., even though there was no evidence that E.R. was armed.  E.R. was hit in the hand and head.  He was in a defenseless position in the vehicle during the entire time leading up to when Officer Johnson shot him.  At no time leading up to the shooting did E.R. commit an act that could have been interpreted as an aggressive move towards Officer Johnson, reach toward his clothing or make any aggressive move in a threatening manner towards Officer Johnson, make a verbal threat towards Officer Johnson, or display any weapon towards Officer Johnson.  Photos show that Officer Johnson was standing in the road while shooting into the vehicle occupied by E.R. and J.C., with both occupants totally contained in the vehicle.  After intentionally shooting E.R., Officer Johnson returned to his vehicle to obtain more ammunition or another firearm, but then apparently decided to stop shooting.  Officer Johnson was standing in the roadway with the gun when other officers arrived at the scene.

E.R. posed no threat of serious physical harm to Officer Johnson at the time of the shooting; Officer Johnson's actions in shooting E.R. were objectively unreasonable in light of the facts and circumstances confronting him; the shooting of E.R. was totally unnecessary

under the circumstances, considering that he posed no immediate threat of serious physical harm to Officer Johnson; and the use of deadly force in this context was totally unjustified.

While acting under color of state law and under the authority granted him by the FBPD, and in the course and scope of his employment with the FBPD, Officer Johnson shot E.R.

Before Farmers Branch hired Officer Johnson, he had been disciplined at least three different times for excessive force.  He had two excessive force complaints filed against him during his eight-year tenure as an officer with Dallas Area Rapid Transit.

According to Arevalo, on or about March 13, 2016, defendant Chief Fuller was the Farmers Branch Chief of Police who was responsible for training officers of the FBPD and for initiating, maintaining, and implementing all FBPD policies and procedures.

Prior to, and at the time of, the events leading up to the shooting of E.R., Officer Johnson had been hired/retained by Brookhaven Apartments, where he resided, as a "courtesy officer," to provide security services at the apartment complex.  Adara was the apartment manager, and Brookhaven Apartments was the owner.  Adara and Brookhaven both authorized Officer Johnson to patrol the premises and conduct security activities on and around the premises.  In addition to his capacity as an officer of the FBPD, Johnson was also acting in the capacity as a security officer for Adara and Brookhaven at the time of the shooting.  Adara and Brookhaven did not conduct a thorough and complete background check regarding Officer Johnson's employment history and the claims of excessive force

lodged against him before retaining/hiring him to perform security services for the Brookhaven Apartments.

B

The following motions are pending for decision: Officer Johnson's motion to dismiss Arevalo's amended complaint; Farmers Branch and Chief Fuller's motion to dismiss; Officer Johnson's motion to stay proceedings; and Adara and Brookhaven's Rule 12(c) motion for judgment on the pleadings.  Arevalo opposes the motions.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a motion to dismiss, Arevalo must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

- 6 -

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U. S. at 555).

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation and internal quotation marks omitted)).

Because Officer Johnson has asserted the affirmative defense of qualified immunity, Arevalo has a heightened burden when pleading the excessive force claim asserted against him in count two. "[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)). "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir.

1999).  The case should not be allowed to proceed against the public official unless the plaintiff can assert specific facts that, if true, would overcome the defense.  *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]").[4]

## III

The court turns first to Arevalo's excessive force claim against Officer Johnson. Officer Johnson moves to dismiss under Rule 12(b)(6) on the grounds that Arevalo has failed to state a claim on which relief can be granted, and that she has failed to overcome the affirmative defense of qualified immunity.

## A

"The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers

---

[4]Although a plaintiff may comply with ordinary pleading standards in her initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a).  *Schultea*, 47 F.3d at 1433.  "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations."  *Id.*  The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist."  *Id.* at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").  In the instant case, Arevalo included a Rule 7(a) reply in her amended complaint.  *See* Am. Compl. ¶¶ 32-34.

who use excessive force against citizens." *Colston v. Barnhart*, 130 F.3d 96, 102 (5th Cir. 1997).   "To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

In assessing the reasonableness of the use of force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).   "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham,* 490 U.S. at 396).   This is an objective standard: "the question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham*, 490 U.S. at 397.   "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.   " An officer's use of deadly force is presumptively reasonable

when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether [a] defendant[] [is] entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [she has] alleged show that defendant['s] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial

inquiry.")).[5]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.*

> A right is clearly established only if the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  A case directly on point is not required; rather, the central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.

*Cole v. Carson*, 802 F.3d 752, 761 (5th Cir. 2015) (quoting *Trent v. Wade*, 776 F.3d 368, 383 (5th Cir. 2015)) (internal quotation marks and brackets omitted), *vacated on other grounds*, ___ U.S. ___, 137 S.Ct. 497 (2016).

"Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."  *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly

---

[5]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation.  *Id.*  The "decision does not prevent the lower courts from following the Saucier procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."  *Id.* at 242.

established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right."  *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

B

In count two of the amended complaint, Arevalo alleges that Officer Johnson used excessive force against E.R., in violation of E.R.'s Fourth Amendment right against unreasonable seizure, when he shot E.R.  According to the amended complaint, E.R. did not pose a risk of harm to Officer Johnson at the time of the shooting.  E.R.'s arms were over his head, and he did not display a weapon at any time before Officer Johnson shot him.  Despite the fact that Officer Johnson continually screamed vulgar profanities at E.R. for no apparent reason, E.R. did not act aggressively towards Officer Johnson or make any verbal threat against him or anyone else.  E.R. took no action during the traffic stop that could form the basis for a reasonable belief that he posed a threat to Officer Johnson or any reasonable officer under the same circumstances.  Officer Johnson shot E.R. when he posed no threat of serious injury or death to Officer Johnson or any other person. Officer Johnson's shooting of E.R. violated clearly established Fourth Amendment law governing the use of excessive force, and his conduct was objectively unreasonable under the clearly established law at the time of the shooting.

In Officer Johnson's answer, he denies many of the allegations of the amended complaint. He admits, however, that he observed E.R. and another suspect commit a vehicle burglary on the date and time alleged, that he pursued the two of them, and that he attempted to confront them after their vehicle came to a halt. Answer to Am. Compl. ¶ 7 [first].[6] In support of his qualified immunity defense, Officer Johnson alleges the following version of the events in question.

While at home in his apartment in Farmers Branch, Texas, Officer Johnson observed through a window that E.R. was burglarizing Officer Johnson's vehicle (an SUV) by removing the third seat. Officer Johnson also observed a second vehicle (a Dodge Challenger) occupied by a male in the driver's seat, and he observed E.R. place the stolen seat in the back of the Dodge and get into the passenger side. Officer Johnson recognized the Dodge Challenger as matching the description of a vehicle reported to have been involved in recent vehicle burglaries in the Farmers Branch area involving the thefts of removable third row seats from SUVs. Officer Johnson quickly went to the apartment complex parking lot where he observed the Dodge Challenger exiting the parking lot. Officer Johnson entered his vehicle in order to follow the burglary suspects and to notify on-duty officers of the crime. He observed that the third row seat was missing from his vehicle.

Officer Johnson followed the Dodge Challenger in an attempt to catch up to it. He was unable to contact on-duty police because he had left his personal phone in his apartment,

_____

[6]There are two paragraphs numbered as 7 in the answer.

and he was unable to read the Dodge Challenger's license plate because it displayed a temporary paper tag.  After Officer Johnson caught up to the Dodge Challenger, the vehicle accelerated and changed lanes in front of him. As the vehicles continued on their route, the Dodge Challenger quickly decelerated as if intending to turn.  This action caught Officer Johnson off guard, causing inadvertent contact between the vehicles, which then came to a stop in an intersection.

Officer then Johnson quickly exited his vehicle and approached the Dodge Challenger while yelling loudly "POLICE! SHOW ME YOUR HANDS!"  Answer to Am. Compl. ¶ 32 (upper case font in original).  He issued this command several times.  Officer Johnson initially observed the driver of the Dodge Challenger (J.C.) to have his hands on the steering wheel.  But as Officer Johnson approached the Dodge Challenger, the driver quickly removed his hands from the steering wheel and reached into an area low and between the two front seats adjacent to E.R., the passenger.  The area where J.C., the driver, was reaching was low between the front seats and not within Officer Johnson's view.  In Officer Johnson's experience, this movement is consistent with a fleeing felon (a burglar) reaching for a weapon in a vehicle's middle console area.  Officer Johnson reasonably feared that the occupants presented an immediate threat of serious injury to him.  He immediately repeated his prior verbal command, but the driver continued to reach to the area between the seats, out of Officer Johnson's view.  Officer Johnson then fired his weapon in response to this threat.

C

Officer Johnson maintains that he is entitled to dismissal of count two based on Arevalo's failure to state a claim and on the basis of qualified immunity. He posits that Arevalo has failed to plead sufficient specific or detailed facts to establish circumstances that would render the alleged force excessive or overcome his qualified immunity defense, that is, that Arevalo has failed to factually establish that no reasonable police officer in Officer Johnson's shoes could have believed that his conduct was lawful. Officer Johnson summarizes in his brief what he maintains are Arevalo's specific factual allegations (as opposed to conclusory claims) regarding the circumstances confronting him, and he posits that Arevalo's failure to plead any additional facts regarding the actions of J.C. or E.R.—other than that they were both fleeing after attempting a burglary—fails to sufficiently plead all of the circumstances confronting him at the time of the use of the force in question. Officer Johnson contends that the entire circumstances determine whether a use of force is excessive, and that Arevalo's failure to plead all of the circumstances is fatal to her claim.

Officer Johnson also argues that the amended complaint is insufficient to overcome the defense of qualified immunity because Arevalo has failed to allege sufficient circumstances or actions of E.R. that might have rendered such unspecified force reasonable or unreasonable under the circumstances; has failed to allege facts that would establish the circumstances confronting Officer Johnson at the time of the incident; and has failed to allege an injury resulting only from an alleged excessive use of force. Officer Johnson maintains that the allegations of the amended complaint focus on some of his alleged actions without

- 15 -

providing factual allegations of the circumstances confronting him that would determine whether his alleged actions were reasonable; that Arevalo hardly pleads any facts regarding the actions or statements of J.C., the driver of the Dodge Challenger, during the encounter with Officer Johnson; that she fails to plead that E.R. was not reaching somewhere other than his clothing; fails to plead what positioning of E.R. was allegedly "defensive"; fails to plead facts regarding the alleged "altercation"; fails to plead whether E.R. committed aggressive acts at all; fails to plead that E.R. made no aggressive moves in any direction; and fails to plead whether E.R. made any threats other than "verbal" threats.  Officer Johnson cites a recent decision of the Southern District of Texas that relied on established Fifth Circuit precedent when recognizing that immunity was appropriate in a shooting case where, although the suspect was unarmed, the officer reasonably perceived a threat.  He maintains that Arevalo's failure to plead specific facts as to the facts and circumstances confronting him is fatal to her attempt to plead an excessive force under the Fourth Amendment, and that the claim should be dismissed.  Officer Johnson also contends that because the amended complaint was prepared and filed specifically to address Officer Johnson's qualified immunity, the court may now presume that Arevalo Plaintiff has pleaded her best case such that no further amendments or Rule 7(a) replies need be permitted before dismissing the claim against him.

## D

As noted above, the elements of a Fourth Amendment excessive force claim are (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive,

and (3) the excessiveness of which was clearly unreasonable. Officer Johnson does not contest the first element. When addressing injury, he challenges the second element. *See* D. Johnson Br. 8 ("Plaintiff fails to allege an injury resulting *only* from an alleged excessive use of force." (emphasis in original)). The court therefore turns to the second and third elements.

Arevalo alleges "that the injuries to [E.R.] resulted directly and only from a use of force that was clearly excessive to the need." Am. Compl. ¶ 25. Officer Johnson maintains that she has not adequately pleaded the second element. But considering the absence in the record of any suggestion that E.R. suffered injuries from any cause other than being shot by Officer Johnson, the allegation of her amended complaint is sufficient to plausibly plead that E.R.'s injuries resulted directly and only from this use of force. The question therefore becomes whether Arevalo has adequately pleaded the second component of the second element—that E.R.'s injuries resulted directly and only from a use of force that was clearly excessive—and the third element—that the excessiveness of the force was clearly unreasonable. The court will consider these two requirements together, and in tandem with Officer Johnson's qualified immunity defense, because they all present essentially the same or overlapping questions.

Considering the *Graham* factors and judging the alleged use of force from "the perspective of a reasonable officer on the scene," *Rockwell*, 664 F.3d at 991, the court concludes that, viewed favorably to Arevalo and accepted as true, the well-pleaded allegations of the amended complaint plead a plausible claim that Officer Johnson's use of force against E.R. was clearly excessive, and that the excessiveness was clearly

unreasonable.  The amended complaint is also sufficient to overcome Officer Johnson's defense of qualified immunity because it plausibly pleads facts that enable the court to draw the inference that every reasonable police officer in Officer Johnson's circumstances would have known that his conduct violated E.R.'s Fourth Amendment right to be free from the use of excessive force.

Arevalo alleges that Officer Johnson pursued E.R. and J.C. after they departed the scene of the alleged burglary of a vehicle; that he rammed their vehicle, causing it to spin out of control; that he exited his vehicle while brandishing his service weapon and identifying himself as a police officer; and that he then confronted E.R. and J.C.  Without provocation, Officer Johnson used a semi-automatic handgun to fire 17 rounds into the vehicle that E.R. and J.C. occupied, even though there was no evidence that E.R. was armed.  E.R. was in a defenseless position in the vehicle during the entire time leading up to when Officer Johnson shot him.  At no time did E.R. commit an act that could have been interpreted as an aggressive move towards Officer Johnson, reach toward his clothing or make any aggressive move in a threatening manner towards Officer Johnson, make a verbal threat towards Officer Johnson, or display any weapon towards Officer Johnson.  Photos show that Officer Johnson was standing in the road while shooting into the vehicle that E.R. and J.C. occupied, with both occupants totally contained in the vehicle.  After intentionally shooting E.R., Officer Johnson returned to his vehicle to obtain more ammunition or another firearm, but then apparently decided to stop shooting.  Officer Johnson was standing in the roadway with the gun when other officers arrived on the scene.

The amended complaint also alleges that E.R. posed no threat of serious physical harm to Officer Johnson at the time of the shooting; that Officer Johnson's actions in shooting E.R. were objectively unreasonable in light of the facts and circumstances confronting him; that the shooting of E.R. was totally unnecessary under the circumstances, considering that E.R. posed no immediate threat of serious physical harm to Officer Johnson; and that the use of deadly force in this context was totally unjustified.  And Arevalo alleges that E.R. did not pose a risk of harm to Officer Johnson at the time of the shooting; that E.R.'s arms were over his head, and he did not display a weapon to Officer Johnson at any time prior to the shooting; that despite the fact that Officer Johnson continually screamed vulgar profanities at E.R. for no apparent reason, E.R. did not act aggressively towards Officer Johnson or make any verbal threat against him or anyone else; that E.R. took no action during the traffic stop that could form the basis for a reasonable belief that he posed a threat to Officer Johnson or any reasonable officer under the same circumstances; and that Officer Johnson shot E.R. when he posed no threat of serious injury or death to Officer Johnson or any other person. Considered in combination, these facts enable the court to draw the reasonable inference that, at the time Officer Johnson fired 17 rounds, he did so into a vehicle that had stopped and was no longer fleeing; Officer Johnson was standing in the road outside the vehicle; there was no evidence that E.R. was armed, and E.R. did not display a weapon; E.R. was in a defenseless position with his arms over his head; and E.R. posed no immediate threat of serious injury or death to Officer Johnson or any other person.  In sum, viewed favorably to Arevalo and accepted as true, the well-pleaded allegations of the amended complaint enable the court to

draw the reasonable inference that E.R. posed little or no threat to Officer Johnson, and that the use of force was clearly excessive and the excessiveness was clearly unreasonable. And because it was clearly established at the time of the shooting that "where the suspect poses no immediate threat to the officer and no threat to others," the use of deadly force is unreasonable, *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), Arevalo's pleaded facts are sufficient to overcome Officer Johnson's qualified immunity defense.

Officer Johnson, of course, offers a different version of what occurred. But merely offering a different version of the facts is insufficient to prevail on a Rule 12(b)(6) motion. Instead, he appears to offer a alternative version of the facts that he maintains Arevalo has not sufficiently rebutted through specific, non-conclusory factual allegations of her own. Officer Johnson asserts that he discharged his weapon because, as he approached the Dodge Challenger, and despite identifying himself as a police officer and repeatedly ordering J.C. and E.R. to show him their hands, J.C., whose hands had been on the steering wheel, quickly removed his hands from the steering wheel and reached into an area low and between the two front seats adjacent to E.R. According to Officer Johnson, the area where J.C. was reaching was low between the front seats and not within Officer Johnson's view. In Officer Johnson's experience, this movement is consistent with a fleeing felon reaching for a weapon in a vehicle's middle console area. Officer Johnson reasonably feared that the occupants presented an immediate threat of serious injury to him. Although he immediately repeated his prior verbal command, J.C. continued to reach to the area between the seats, out of Officer Johnson's view. Officer Johnson then fired his weapon in response to this threat.

Officer Johnson appears to argue that Arevalo has an obligation, but has failed, to specifically address his version of what occurred, including the circumstances he alleges were confronting him at the time he used the force, and the alleged actions or statements of J.C. But Officer Johnson has not demonstrated that Arevalo shoulders such an obligation, which would essentially require that she rebut his version of the events. At the motion to dismiss stage, the court must accept all well-pleaded facts and true and draw all reasonable inferences in Arevalo's favor. Accordingly, when the facts alleged are sufficient to state a claim and overcome the defense of qualified immunity, the court must infer that unpleaded allegations would not render the claim implausible or establish the defense.

In light of Officer Johnson's countervailing view of what transpired between him and J.C. and E.R., the court does not suggest that Arevalo will be able to establish her excessive force claim, "but only that the pleadings are sufficient to create that possibility." *Khansari v. City of Houston*, 14 F.Supp.3d 842, 861 (S.D. Tex. 2014). "Should discovery lead to the conclusion that there is no genuine issue of fact that could support such a claim, there will be no procedural or substantive barrier to the filing of a motion for summary judgment on the issue of qualified immunity." *Id.* But at the Rule 12(b)(6) stage, "the complaint should generally not be dismissed for failure to state a claim because the issue of whether immunity applies is a factual question related to the merits." *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996) (citing *Scheur v. Rhodes*, 416 U.S. 232, 250 (1974), *overruled on other grounds by Harlow*, 457 U.S. at 814-15). The court therefore denies Officer Johnson's motion to dismiss Arevalo's claim against him.

IV

The court now considers the motion to dismiss of Farmers Branch. Farmers Branch moves to dismiss Arevalo's § 1983 claim on the ground that she has failed to allege facts supporting the existence of an official custom or policy.

A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can be held liable if a deprivation of a constitutional right was inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

The first element requires that Arevalo adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is

extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations, brackets, and some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Arevalo must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of the governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall.*

*Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Arevalo adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Arevalo therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

B

"'Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy.'" *Pogue v. City of Dallas*, 2014 WL 3844675, at *3 (N.D. Tex. Aug. 4, 2014) (Boyle, J.) (quoting *Piotrowski*,

237 F.3d at 579).   A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).   "A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority."   *Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 717 (N.D. Tex. 1998) (Fish, J.) (citing *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989)).   "'Boiler plate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'"   *Crow v. Cash Special Util. Dist.*, 2005 WL 1126826, at \*2 (N.D. Tex. May 11, 2005) (Sanders, J.) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994)).

In addition to conclusory allegations that "Plaintiff will show that . . . Farmers Branch, Texas maintained policies and procedures which caused the violation of [ER's] civil rights," Am. Compl. ¶ 1,[7] that Farmers Branch, "through its customs and practices has instituted and maintained a policy of police brutality and excessive force which was used against [E.R.]," *id.* at ¶ 21, and "that such inadequate training described herein can justifiably be said to

---

[7]Arevalo also refers to unspecified "policies [and] practices . . . that led to the unlawful conduct."   Am. Compl. ¶ 17.

represent 'city policy,'" *id.* at ¶ 28, Arevalo's only more specific allegation about the existence of a policy or custom is this:

> the policies, customs, and practices of The City of Farmers Branch, Texas regarding the training of its law enforcement officers resulted in the violation of [E.R.'s] Fourth Amendment rights against unreasonable search and seizure which were well established as of the date of the occurrence made the basis of this lawsuit. Defendant, the City of Farmers Branch, Texas hired Officer Johnson with full knowledge of Officer Johnson's employment history and record of infractions which put it on actual notice of Officer Johnson's incompetence as a law enforcement officer, or in the alternative, the City of Farmers Branch, Texas was consciously indifferent to Officer Johnson's lack of qualifications and training to work as a law enforcement officer particularly with regard to Officer Johnson's inadequate training on the use of deadly force and medical care for gunshot victims.

Am. Compl. ¶ 24. This paragraph of the amended complaint essentially contains one conclusory assertion: that Farmers Branch's policies, customs, and practices regarding the training of its law enforcement officers resulted in the violation of E.R.'s Fourth Amendment rights against unreasonable search and seizure. The balance of the paragraph addresses Farmers Branch's decision to hire Officer Johnson despite full knowledge of his employment history and record of infractions or its conscious indifference to his lack of qualifications and training, particularly regarding his inadequate training on the use of deadly force and medical care for gunshot victims. And even accepting as true all of the facts alleged in the amended complaint, including in ¶ 24, Arevalo has only alleged that a single episode occurred in which Farmers Branch knowingly hired (or acted with conscious indifference in hiring) an incompetent law enforcement officer whom it then failed to adequately train on the use of

deadly force and medical care for gunshot victims. *See Renfro*, 27 F.Supp.2d at 717. Arevalo does not plausibly allege that Farmers Branch hired any other employee with a similar record in a similar manner, or that it had a policy or custom of doing so. The court is therefore unable to draw the reasonable inference that there was a widespread practice that was so common and well-settled as to constitute a custom that fairly represented municipal policy. Accordingly, the court dismisses Arevalo's claim against Farmers Branch.

V

In count three, Arevalo alleges a claim against Chief Fuller for failure to properly train Officer Johnson. Chief Fuller moves to dismiss this claim based on qualified immunity.

A

Failure to train is a separate theory of municipal liability or government official liability, *see, e.g., Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010), but the same standard applies both to a failure to train claim and to a municipal policy or custom claim, *see, e.g., Valle*, 613 F.3d at 544 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). To plead a plausible claim, Arevalo must allege facts that enable the court to draw the reasonable inference that "(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [E.R.'s] injury." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000)). "Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing

of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542, 547. "[T]o

satisfy the second prong and prove that the municipality acted with deliberate indifference,

the plaintiff must generally 'show a pattern of violations and that the inadequate training or

supervision was obvious and obviously likely to result in a constitutional violation.'" *Byers*

*v. Navarro Cnty.*, 2012 WL 677203, at *16 n.39 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.)

(quoting *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010)) (emphasis, internal quotation

marks, and brackets omitted).

B

The court need not analyze each step of Chief Fuller's qualified immunity defense.

This is because Arevalo has failed to plead a plausible claim of failure to train. In count three

of her amended complaint, Arevalo makes the following conclusory allegations: that Chief

Fuller violated E.R.'s Fourth Amendment rights against excessive force by failing to institute

proper training of FBPD officers; that Chief Fuller failed to train Officer Johnson on proper,

constitutionally permissible procedures for the use of deadly force; that although Officer

Johnson had prior instances of using excessive force at the time he was hired by Farmers

Branch, it provided him no training on the constitutionally permissible use of deadly force;

Chief Fuller knew when he placed Officer Johnson on duty with a service weapon that he

was inadequately trained on the constitutionally permitted use of deadly force in the course

of a traffic stop; in light of the duties assigned to Officer Johnson, the need for more or

different training was so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that Chief Fuller can reasonably be said to have been deliberately

indifferent to the need; Chief Fuller provided no training to Officer Johnson on the use of deadly force; and by reason of the inadequacy of his training program, Officer Johnson shot E.R., which violated E.R.'s Fourth Amendment rights against excessive force.

These conclusory allegations do not allow the court to draw a reasonable inference that Chief Fuller failed to train in a manner that caused injury to E.R.  The alleged facts are nothing more than conclusory statements that the training was "deficient" or "inadequate[]." As with her municipal liability claim, Arevalo alleges no details about "a pattern of similar constitutional violations by untrained employees" as required to demonstrate deliberate indifference.  *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011); *see also Huff v. Refugio Cnty. Sheriff's Dep't*, 2013 WL 5574901, at *6 (S.D. Tex. 2013) (Costa, J.) (dismissing failure to train claim because plaintiff made no allegation of similar violations by untrained officials).  Accordingly, the court dismisses Arevalo's failure to train claims under § 1983 as to Chief Fuller.

## VI

Although the court is dismissing Arevalo's claims against Farmers Branch and Chief Fuller, it will permit her to replead. *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). Because there is no indication that Arevalo cannot, or is unwilling to, cure the pleading defects the court has identified, the court

grants her 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

## VII

The court turns next to Adara and Brookhaven's motion for judgment on the pleadings.

## A

To establish negligence under Texas law, Arevalo must demonstrate "the existence of a duty, a breach of that duty, and damages proximately caused by the breach." *Davis v. Dall. Cnty.*, 541 F.Supp.2d 844, 850 (N.D. Tex. 2008) (Fitzwater, C.J.) (quoting *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)). "An employer can be liable for negligence if its failure to use due care in hiring, supervising, or retaining an employee creates an unreasonable risk of harm to others." *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App. 2015, no pet.) (citations omitted). Although the Supreme Court of Texas "has yet to rule definitively on the 'existence, elements, and scope of . . . negligent training and hiring,'" *id*. (alteration in original) (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010)), "it has indicated that to recover on these theories, a plaintiff must show more than just negligent hiring practices," *id*. (citing *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (per curiam)). "The plaintiff must also show [he] 'suffer [ed] some damages from the foreseeable misconduct of an employee' who was hired, supervised or retained pursuant to the defendant's negligent practices." *Id*. (quoting *Wansey*, 379 S.W.3d at 247). "[T]he plaintiff's harm must be foreseeable in the sense that it is brought about by conduct that was

in some manner job-related." *Moore v. Strike, LLC*, 2017 WL 96130, at *7 (Tex. App. Jan. 11, 2017, no pet.). Whether the conduct is job-related also indicates if the employer's negligence proximately caused the injury. *Id.* (collecting cases).

B

Arevalo seeks to hold Adara and Brookhaven liable for negligently hiring and retaining Officer Johnson as a courtesy officer.[8] Arevalo maintains that Adara and Brookhaven should be held liable because Officer Johnson was engaged in dual roles as a courtesy officer and police officer when he shot and injured E.R.

Binding Fifth Circuit precedent forecloses this theory. In *Moore v. Wal-Mart Stores, Inc.*, 1995 WL 449901 (5th Cir. June 30, 1995) (unpublished table opinion),[9] the panel considered whether Wal-Mart Stores, Inc. could be held vicariously liable after the weapon of Deputy Sheriff Keith Pusser, an off-duty police officer working as a store security officer, discharged and struck a person (Moore) who was fleeing after attempting to use a forged

---

[8]The amended complaint may be read to also assert negligence claims against Adara and Brookhaven concerning the supervision, training, and retraining of Officer Johnson. But the court need not separately analyze these possible claims because it concludes that Arevalo has failed to allege that the shooting was related to Officer Johnson's employment at Brookhaven, and thus that Brookhaven and Adara proximately caused E.R.'s injuries. *See Moore*, 2017 WL 96130, at *7 (noting that proximate cause is required for negligent supervision claims); *E. Tex. Med. Ctr. v. Delaune*, 2015 WL 7709398, at *2 (Tex. App. Nov. 30, 2015, pet. filed) (mem. op.) (noting proximate cause required for negligent training claims).

[9]*Weaver v. Ingalls Shipbuilding, Inc.*, 282 F.3d 357, 359 (5th Cir. 2002) ("The fact that *Watkins* is unpublished does not alter its precedential status, because it was decided before January 1, 1996." (citing 5th Cir. R. 47.5.3)).

check to make purchases.  Moore sued Wal-Mart on theories of vicarious liability and negligent hiring.  *Id.* at *1.  The panel held, in pertinent part, that, under Texas law, "[a]n off-duty police officer who observes a crime immediately becomes an on-duty police officer." *Id.* (collecting Texas cases).  "Thus, at the time Officer Pusser was apprehending Moore, he was an on-duty police officer by operation of Texas law."  *Id.*  The panel also rejected Moore's contention that Wal-Mart was responsible for Officer Pusser's actions under a "theory of joint control."  *Id.*  The court concluded:

> It is undisputed that Officer Pusser was a Wal-Mart employee at the time that Moore first tried to make her purchase with the forged check.  When Officer Pusser sought to apprehend Moore, he ceased being a Wal-Mart employee and became an on-duty police officer.  We therefore hold that summary judgment was properly entered against Moore.

*Id.* at *2.[10]

Accordingly, because Arevalo has pleaded facts that only permit the reasonable inference that, at the time Officer Johnson shot E.R., his actions were not related to his employment at Brookhaven, but rather to his employment as a Farmers Branch police officer, she has not alleged a plausible claim against them for negligent hiring and retention.  *See Moore*, 2017 WL 96130, at *7 (requiring that actions be job related).

The court therefore grants Adara and Brookhaven's motion for judgment on the pleadings.  The court concludes that no amended pleading can remedy the defects in this

---

[10]The Fifth Circuit recently reaffirmed *Moore*'s holding.  *Legrand v. Gillman*, 576 Fed. Appx. 334, 335 n.1 (5th Cir. 2014) (per curiam).

claim.  Accordingly, the court dismisses Arevalo's actions against Adara and Brookhaven with prejudice by judgment entered today.

## VIII

Officer Johnson also moves to stay this lawsuit against him during his criminal trial.

## A

"[A] district court may stay a civil proceeding during the pendency of a parallel criminal proceeding. Such a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'"  *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) (citing *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. Oct. 1981)). "The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation."  *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

> As the Fifth Circuit has instructed, in ruling on requests for stays of the civil side of parallel civil/criminal proceedings, [j]udicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed unstayed.

*United States v. Gieger Transfer Serv., Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997) (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)) (internal quotation marks omitted). Moreover, "[i]n the proper case the trial judge should use his discretion to narrow the range of discovery" rather than staying the entire case.  *Campbell*, 307 F.2d at 487.

> Courts from other jurisdictions have outlined several factors that
> should be considered in determining whether "special
> circumstances" warrant a stay, including: (1) the extent to which
> the issues in the criminal case overlap with those presented in
> the civil case; (2) the status of the criminal case, including
> whether the defendants have been indicted; (3) the private
> interests of the plaintiffs in proceeding expeditiously, weighed
> against the prejudice to plaintiffs caused by the delay; (4) the
> private interests of and burden on the defendants; (5) the
> interests of the courts; and (6) the public interest.

*Heller Healthcare Fin., Inc. v. Boyes*, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002)

(Fitzwater, J.) (citing *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld*

*Mech., Inc.*, 886 F.Supp. 1134, 1139 (S.D.N.Y. 1995) (citing *Milton Pollack, Parallel Civil*

*& Criminal Proceedings*, 129 F.R.D. 201, 201-03 (1990); *Volmar Distribs., Inc. v. N.Y. Post*

*Co.*, 152 F.R.D. 36, 39 (S.D. N.Y.1993).

B

This court addressed a similar situation in *Walker v. Wilburn*, 2015 WL 5873392

(N.D. Tex. Oct. 5, 2015) (Fitzwater, J.).  In *Walker*, as here, the plaintiff sued a police officer

under § 1983 for use of excessive force after the officer shot the plaintiff in December 2013.

*Id.* at *1.  The officer was indicted in state court for aggravated assault by a public servant

shortly after the incident.  In late August 2015, more than 18 months after her indictment and

more than four months after this court's deadline to file all motions in the civil proceedings,

the officer moved to stay the case for the duration of her criminal trial.  *Id.*  The plaintiff

objected that a stay would be prejudicial, in large part, because of the delay in filing the

motion.  *Id.* at *8.  Even considering the delay, after a full analysis of the relevant factors,

- 34 -

the court held that the potential prejudice to the defendant's ability to defend herself outweighed the prejudices to the plaintiff. *Id.* at *9. The court found that: (1) the two cases concerned the exact same subject matter; (2) the officer's indictment weighed in favored of a stay; (3) a delay would not prejudice the plaintiff because the parties had already completed discovery, and thus had obtained and preserved evidence; (4) the officer's conflict between asserting her Fifth Amendment rights and defending the civil action favored a stay; (5) the court's interests were neutral; and (6) the public's interest in law enforcement weighed in favor of a stay. *Id.* at *6-*9.

The court reaches the same result here, although under somewhat different facts. Unlike in *Walker*, Arevalo does not face potential prejudice from the dilatory filing of a motion to stay. Arevalo contends that she will suffer prejudice from not being able to effectively conduct discovery, and maintains "[a]t a minimum, [that she] should be permitted to discover information other than the Defendants' compelled statements in their internal affairs investigations[.]" P. Br. 10. As noted above, the court in *Walker* found significant, as to the third factor, that the parties had completed discovery and thus had obtained and preserved evidence. *Walker*, 2015 WL 5873392, at *8. This is not the case here, and Arevalo faces prejudice from not having obtained discovery. But Officer Johnson would suffer prejudice were discovery allowed from him, making factor four weigh more strongly in favor of a stay. *See id.* at * 4. "It is commonly understood that a prosecutor might (if not will) obtain information from parallel civil litigation that is not discoverable in a criminal case. Indeed, this is a concern that courts often rely on to stay civil discovery and

proceedings until parallel criminal proceedings are resolved." *Id.* (collecting cases). The court thus concludes that any additional prejudice of Arevalo is offset by additional prejudice to Officer Johnson.

The remainder of the court's analysis in *Walker* of the six factors holds true here, and the court therefore concludes that, in the interests of justice, a stay of discovery requests made to Officer Johnson is warranted.

Accordingly, the court, in its discretion, stays discovery to the extent Arevalo or another party seeks to request discovery from Officer Johnson (i.e., any method of discovery directed to Officer Johnson, such as requests to take his deposition, and interrogatories and requests for production of documents served on him). This stay does not extend to discovery served on any other party or nonparty, even if the discovery concerns Officer Johnson. This stay shall remain in place until Officer Johnson's criminal case is resolved, either by dismissal, plea, a verdict of not guilty, or a guilty verdict and sentencing. Accordingly, Officer Johnson's motion to stay is granted as set forth in this memorandum opinion and order.

*   *   *

For the foregoing reasons, the court denies Officer Johnson's motion to dismiss and grants his motion to stay; grants Farmers Branch and Chief Fuller's motion to dismiss; and grants Adara and Brookhaven's motion for judgment on the pleadings. The court also grants Arevalo leave to replead her claims against Farmers Branch and Chief Fuller. The court

- 36 -

dismisses Arevalo's actions against Adara and Brookhaven by Rule 54(b) final judgment entered today.

**SO ORDERED**.

March 28, 2017.

_____

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE