IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EVA AREVALO, INDIVIDUALLY      §
AND AS NEXT FRIEND OF E.R.,     §
A MINOR,                        §
                                §
            Plaintiff,          §
                                §
VS.                             §       Civil Action No. 3:16-CV-1540-D
                                §
CITY OF FARMERS BRANCH,         §
TEXAS, et al.,                  §
                                §
            Defendants.         §

MEMORANDUM OPINION
AND ORDER

This is an action under 42 U.S.C. § 1983 by the mother of a teenager shot by an off-duty police officer, seeking relief against defendants City of Farmers Branch, Texas ("Farmers Branch"), its Chief of Police, Sid Fuller ("Chief Fuller"), and Farmers Branch police officer Ken Johnson ("Officer Johnson"). Farmers Branch and Chief Fuller move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted, presenting the questions whether Farmers Branch is subject to municipal liability and whether plaintiff has overcome Chief Fuller's defense of qualified immunity. For the reasons that follow, the court holds that plaintiff has failed to plausibly plead that Farmers Branch is subject to municipal liability, and it defers a ruling on whether Chief Fuller is entitled to qualified immunity pending plaintiff's filing a Rule 7(a) reply and receipt of supplemental briefing after the reply is filed.

# I

Because this case is the subject of a prior memorandum opinion and order, *see Arevalo v. City of Farmers Branch*, 2017 WL 1153230 (N.D. Tex. Mar. 28, 2017) (Fitzwater, J.) ("*Arevalo I*"), the court will only recount the background facts and procedural history that are pertinent to this decision.

This is a suit under 42 U.S.C. § 1983 by plaintiff Eva Arevalo ("Arevalo"), individually, and on behalf of her son E\_\_\_\_\_ R \_\_\_\_\_ ("E.R."),[1] against defendants Framers Branch, Chief Fuller, and Officer Johnson. According to Arevalo's second amended complaint,[2] Officer Johnson observed E.R. and J\_\_\_\_ C\_\_\_\_ ("J.C.")[3] attempting to burglarize Officer Johnson's personal vehicle in the parking lot of the Brookhaven Apartments. After identifying himself as a police officer, Officer Johnson pursued E.R. and J.C. as they fled in their own vehicle. Officer Johnson succeeded in ramming E.R.'s vehicle

---

[1]Rule 5.2(a)(3) provides that "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party or nonparty making the filing may include only . . . the minor's initials."

[2]In deciding defendants' Rule 12(b)(6) motion, the court construes the second amended complaint in the light most favorable to Arevalo, accepts all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[3]The court will also refer to the late J.C., another minor, by his initials. *See supra* note 1.

from the rear, causing it to spin out and come to a rest near the corner of Spring Valley Road and Marsh Lane. While E.R. was in a defenseless position inside his car, Officer Johnson entered the street and fired 17 shots at E.R. without provocation, hitting him in both the hand and the head.

The second amended complaint alleges that, before being hired as a Farmers Branch police officer, Officer Johnson had been "disciplined on at least three different occasions for excessive force," in addition to receiving two excessive force complaints filed against him during his eight-year stint as an officer with Dallas Area Rapid Transit. 2d Am. Compl. 4. In his capacity as chief of the Farmers Branch Police Department, Chief Fuller hired Officer Johnson with actual knowledge of his prior disciplinary record, and "provided no training to Officer Johnson on the use of deadly force." 2d Am. Compl. 5.

Arevalo initially brought this lawsuit not only against Farmers Branch, Chief Fuller, and Officer Johnson, but against Adara Communities, LLC ("Adara") (the manager of Brookhaven Apartments) and Brookhaven Apartments, LLC ("Brookhaven") (the owner of the Brookhaven Apartments).[4] Arevalo's suit included federal-law claims under § 1983 against Farmers Branch, Chief Fuller, and Officer Johnson, and state-law negligence claims against Adara and Brookhaven. Officer Johnson, Chief Fuller, and Farmers Branch each moved to dismiss the complaint, and Adara and Brookhaven moved for judgment on the

---

[4]Arevalo's first amended complaint alleged that, at the time of the shooting, Brookhaven and Adara had hired Officer Johnson as a "courtesy officer" to provide security services at the apartment complex, authorizing him to patrol the premises and conduct security activities on or around the premises.

pleadings. In *Arevalo I* the court denied Officer Johnson's motion to dismiss and allowed Arevalo's § 1983 claims for excessive force to proceed, staying the action against Officer Johnson pending his criminal trial. The court granted, however, Adara and Brookhaven's motion for judgment on the pleadings and Farmers Branch and Chief Fuller's motion to dismiss. The court concluded that Arevalo's § 1983 claims against Farmers Branch must be dismissed because she had failed to allege facts supporting the existence of an official custom or policy that resulted in the violation of E.R.'s constitutional rights. The court also held that Arevalo had failed to allege sufficient facts to state a plausible claim under § 1983 against Chief Fuller for failure to train.

The court granted Arevalo leave to amend her federal-law claims against Farmers Branch and Chief Fuller, however, and she has now filed a second amended complaint. Arevalo reasserts her claims under § 1983 against Farmers Branch and Chief Fuller for violations of E.R.'s Fourth Amendment rights. She alleges that Chief Fuller, individually, and Farmers Branch (through Chief Fuller's actions) were deliberately indifferent to E.R.'s constitutional rights in two ways: first, they hired Officer Johnson despite his history of using excessive force, and, second, Chief Fuller failed to train Officer Johnson in the proper use of deadly force.

Farmers Branch and Chief Fuller now move to dismiss under Rule 12(b)(6), contending that Arevalo has failed in her second amended complaint to state a claim on which relief can be granted. Arevalo opposes the motion.

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin F. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a motion to dismiss, Arevalo must allege enough facts "to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause

of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

The court first considers Farmers Branch's motion to dismiss Arevalo's failure to train and hiring claims.[5]

## A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted).

The first element requires that Arevalo adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority."

---

[5]Although deliberately indifferent hiring and failure to train are separate claims, they are subject to the same requirements for establishing municipal liability. The court will therefore analyze them together.

*Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker. *Id.* (citations, brackets and some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.3d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Arevalo must adequately plead the identity of a policy maker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit

recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Arevalo adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Arevalo therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Farmers Branch moves to dismiss Arevalo's § 1983 claims on the grounds that Arevalo has failed to demonstrate the existence of a city policy; that Arevalo has failed to plead the existence of a final policymaker; and that the decisions to hire and not to provide deadly force training to Officer Johnson do not amount to deliberate indifference or the "moving force" behind the violation of E.R.'s constitutional rights. Arevalo contends that she has sufficiently pleaded all three requirements for municipal liability.

B

The court first considers Farmers Branch's claim that Arevalo has failed to identify an official custom or policy.

1

"'Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy.'" *Pogue v. City of Dallas*, 2014 WL 3844675, at *3 (N.D. Tex. Aug. 4, 2014) (Boyle, J.) (quoting *Piotrowski*, 237 F.3d at 579). A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom. *Spiller of City of Texas City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). "A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 717 (N.D. Tex. 1998) (Fish, J.)

(citing *Worsham v. City of Pasadena*, 881 F.2d 1336,1339-40 (5th Cir. 1989)).

2

Arevalo alleges that Chief Fuller, as a policymaker, failed to train the Farmers Branch Police Department in the use of deadly force. "The actions of Chief Fuller failing to institute proper training [regarding the use of deadly force] of the officers employed by the City of Farmers Branch" resulted Officer Johnson violating E.R's constitutional rights.[6] 2d Am. Compl. 8; *see also id.* at 7 ("The policies, customs, and practices of the City as alleged herein regarding the training of its law enforcement officers resulted the violation of E.R.'s Fourth Amendment rights."). She asserts that "such inadequate training described herein can justifiably be said to represent 'city policy.'" *Id.* at 9.

The court holds that these allegations are conclusory. Besides perfunctorily alleging the inadequacy of use of force training, Arevalo points to no official training policy, regulation, or custom that resulted in Officer Johnson's not receiving any training on the use of deadly force. Nor does Arevalo "plausibly allege that Farmers Branch hired any other employee with a similar record in a similar manner, or that it had a policy or custom of doing so." *Arevalo I*, 2017 WL 1153230, at *11. In her second amended complaint, "Arevalo has only alleged that a single episode occurred in which Farmers Branch knowingly hired (or acted with conscious indifference in hiring) an incompetent law enforcement officer whom

---

[6]This text appears in the section of the complaint captioned "Count Three — Chief of Police Fuller." The court is not confined, however, by plaintiff's divisions of the complaint, and "must consider the complaint in its entirety" to determine its sufficiency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

it then failed to adequately train on the use of deadly force." *Id.* These allegations do not alone permit the court to "draw the reasonable inference that there was a widespread practice that was so common and well-settled as to constitute a custom that fairly represented municipal policy." *Id.*

Applying the single-incident exception, however, remains a possibility. Besides her conclusory allegations of city policy, Arevalo alleges that Chief Fuller—and thus Farmers Branch—chose to hire, and failed to train, Officer Johnson specifically. "This single decision on the part of Chief Fuller not to train Officer Johnson on the use of deadly force," 2d Am. Compl. 5, and Chief Fuller's decision to hire him, can each be sufficient to satisfy *Monell*'s requirement of an official city policy. To qualify, however, Chief Fuller must have had final policymaking authority. *See Valle,* 613 F.3d at 542; *Bolton,* 541 F.3d at 548; *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).

## C

The court must therefore determine whether Arevalo has sufficiently alleged that Chief Fuller was a final policymaker.

## 1

Whether a city official is a final policymaker is a question of state and local law. *Praprotnik*, 485 U.S. at 124. As the court has noted, "a policymaker is one who takes the place of the governing body in a designated area of city administration," *Pinedo v. City of Dallas*, 2015 WL 221085, at *4 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.) (citing *Webster*,

735 F.2d at 841); governs not only conduct, but decides the goals for a particular city function, and devises the means of achieving those goals, *Webster*, 735 F.2d at 841; *Bennett*, 728 F.2d at 769; and is not supervised except as to the totality of his performance, *Webster*, 735 F.3d at 841; *Bennett*, 728 F.2d at 769. In the context of § 1983 claims, courts must be sensitive to the distinction between decisionmakers and final policymakers.

> Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (internal citations omitted); *see also Jett*, 7 F.3d at 1246 ("In *Pembaur* and *Praprotnik* the court carefully distinguished between those having mere *decisionmaking* authority and those having *policymaking* authority.") (emphasis in original).

Policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the official. *Webster*, 735 F.2d at 841. If the governing body chooses to delegate policymaking authority to a city official, it does so in either of two ways. *Bennett*, 728 F.2d at 769. It can delegate policymaking power by an express statement, job description, or other formal action. *Id.*; *Swann v. City of Dallas*, 922 F. Supp. 1184, 1204 (N.D. Tex. 1996) (Boyle, J.), *aff'd*, 131 F.3d 140 (5th Cir. 1997) (table).

Or, it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role. *Bennett*, 728 F.2d at 769. In essence, the governing body must expressly or impliedly acknowledge that the agent acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent. *Webster*, 735 F.2d at 841. Whether an official has been delegated final policymaking authority is a question of law for the judge, not a question of fact for the jury. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

2

Farmers Branch maintains that Arevalo has failed to effectively plead that Chief Fuller is a final policymaker. Arevalo responds by pointing to numerous allegations in the second amended complaint that "Chief Fuller is the final policy maker for the City"[7] in regards to "the operation of its police department, including training, hiring, disciplining and termination of its officers." 2d Am. Compl. 5; *see also id.* ("Chief Fuller is the City's policy maker with regard to the training of its law enforcement officers."); *id.* at 6 ("The City through its policymaker, Chief Fuller . . ."); *id.* at 7 ("Additionally, the City, through its policymaker, Chief Fuller, hired Officer Johnson . . ."). She contends that these allegations are sufficient to provide a factual basis that implicates Chief Fuller as the City's authorized

---

[7]The second amended complaint and pertinent case law alternate between the use of "policymaking" and "policy making." The court will use the term "policymaking" when not directly quoting another source.

decisionmaker, "which makes him a policy maker regarding the operation of the police department." P. Br. 8. Arevalo maintains that, because several courts in this circuit have "consistently" found chiefs of police to be law enforcement policymakers for municipal liability, this court should conclude that Arevalo has adequately pleaded that Chief Fuller is a final policymaker. *Id.* The court disagrees.

Arevalo's conclusory assertions are insufficient to enable the court to reasonably infer that Chief Fuller is a final policymaker. As the court notes above, decisionmaking authority and policymaking authority are distinct concepts under *Monell.* Policymakers possess not only the discretion to direct specific actions, but also the "final authority to establish municipal policy" with respect to those actions. *Pembaur*, 475 U.S. at 481. And that authority is delegated by the city through either express delegations—such as state or local law—or implied customs and behavior. Here, however, Arevalo has failed to allege any state or local law or evidence of custom that would enable the court to reasonably infer that the Farmers Branch chief of police possesses final policymaking authority. She instead relies solely on the repeated, conclusory assertions that Chief Fuller is a "final policymaker." These threadbare recitations of a *Monell* element are insufficient to plausibly plead that Chief Filler is a final policymaker. *See, e.g., Meyer v. Coffey*, 231 F.Supp.3d 137, 147-48 (N.D. Tex. 2017) (Boyle, J.) (citing *Gros v. City of Grand Prairie*, 181 F.3d 613, 616 (5th Cir. 1999); *Pinedo*, 2015 WL 221085, at *5) (holding that complaint's "variations of the flat statement that [defendants] were 'final policymakers' . . . because they served as chiefs of

police" were insufficient to plead municipal liability)).

This is because the policymaking authority of chiefs of police within their own department is not something that can be inferred from their title alone. Courts that have determined that chiefs of police are final policymakers have done so because the particular governmental body has provided the chief of police with policymaking authority. *See, e.g, Zarnow v. City of Wichita Falls*, 640 F.Supp.2d 844, 848-50 (N.D. Tex. 2009) (Roach, J.) (considering Wichita Falls City Charter, ordinances, and police department general orders to determine chief of police's policymaking authority), *aff'd*, 614 F.3d 161 (5th Cir. 2010). Other government entities, such as the City of Dallas, do not delegate final policymaking authority to their chief of police. *See Pinedo*, 2015 WL 221085, at *5 (holding that, under Dallas City Charter, "the Chief of Police is *not* the final policymaker because he is at all times subject to the rules and supervision of the City Manager") (emphasis in original); *Mosser v. Haney*, 2005 WL 1421440, at *4 (N.D. Tex. June 17, 2005) (Boyle, J.) (same). Thus without any additional well-pleaded facts regarding a particular police chief's policymaking authority, the court cannot reasonably infer that the chief of police is a *de facto* final policymaker.

The authority that Arevalo cites does not demonstrate otherwise. First, the *Fraire* panel examined the chief of police's policymaking authority specifically within the City of Arlington—not the authority of chiefs of police generally—while affirming the chief's role as a final policymaker. *See Fraire*, 957 F.2d at 1279 n.45. As noted above, in *Zarnow* the

court did the same with respect to the Wichita Falls's chief of police. *See Zarnow*, 640 F.Supp.2d at 848-50. These cases illustrate that a police chief's policymaking authority cannot be assumed, but instead must be derived from an express or implied delegation of authority. Moreover, the court in *Williams v. City of Amory*, 2006 WL 1984596 (N.D. Miss. July 12, 2006), did not address the question whether the chief of police was a final policymaker. And although *Redd v. City of Odessa*, 2001 WL 681588 (W.D. Tex. 2001), and *Kincheloe v. Caudle*, 2009 WL 3381047, at *18 (W.D. Tex. Oct. 16, 2009), do adopt Arevalo's position, both appear to read *Fraire* to hold that *all* chiefs of police are final policymakers.

For the foregoing reasons, the court concludes that Arevalo has failed to plausibly plead that Chief Fuller was a final policymaker for Farmers Branch. Absent final policymaking authority, neither his decision not to train Officer Johnson nor his decision to hire him can qualify as official city policy. And absent any other basis to hold Farmers Branch liable to Arevalo under § 1983, the court holds that Arevalo's second amended complaint fails to state a claim for municipal liability against Farmers Branch.

## IV

The court now turns Arevalo's failure to train and hiring claims under § 1983 against Chief Fuller in his individual capacity. Chief Fuller contends that he is entitled to qualified immunity from both claims.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 285 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [she has] alleged show that the defendant['s] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?")).[8] "If no constitutional right would have

---

[8]Saucier's two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2006). Courts are free to consider

been violated were the allegation established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

> A right is clearly established only if the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. A case directly on point is not required; rather, the central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.

*Cole v. Carson*, 802 F.3d 752, 761 (5th Cir. 2015) (quoting *Trent v. Wade*, 776 F.3d 368, 383 (5th Cir. 2015)) (internal quotation marks and brackets omitted), *vacated on other grounds*, ___ U.S. ___, 137 S.Ct. 497 (2016). "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials

---

Saucier's second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 242.

in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right.'" *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original)). "The relevant inquiry is whether existing precedent placed the conclusion that [the defendant] acted unreasonably in these circumstances 'beyond debate.'" *Mullenix v. Luna*, ___ U.S.___, 136 S.Ct. 305, 309 (2015) (per curiam) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)). Although a plaintiff may comply with ordinary pleading standards in her initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a). *Schultea*, 47 F.3d at 1433. "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). The case should not be allowed to proceed unless the plaintiff can assert specific facts that, if true, would overcome the defense. *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from

suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]"). The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist." *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").

B

The court turns initially to Arevalo's claim against Chief Fuller for a failure to train.

1

Supervisory officials may not be held liable under § 1983 for the actions of their subordinates under any theory of vicarious liability. *Thompson*, 245 F.3d at 459 (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). When, as here, a plaintiff alleges that a supervisory official failed to train or supervise, she must prove that "(1) the supervisor either failed to supervise or train the subordinate officer, (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference" to the constitutional right allegedly violated. *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017); *see also Walker v. Upshaw*, 515 Fed. Appx. 334, 339 (5th Cir. 2013) (per curiam); *Estate of Davis v. City of*

*N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452-53 (5th Cir. 1994) (en banc).

"[D]eliberate indifference is a stringent standard of fault," requiring proof that the supervisory officer "disregarded a known or obvious consequence of his action." *Walker*, 515 Fed. Appx. at 339 (quoting *Estate of Davis*, 406 F.3d at 381) (internal quotation marks omitted). "Actions and decision by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Estate of Davis*, 406 F.3d at 381 (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson*, 245 F.3d at 459 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)). "The plaintiff must generally demonstrate at least a pattern of similar violations . . . [and] the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id.* A plaintiff can, however, "demonstrate liability based on a single incident if the constitutional violation was 'the highly predictable'" consequence of a particular failure to train. *Davidson*, 848 F.3d at 397 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989); *Connick v. Thompson*, 563 U.S. 51, 63-68 (2011)); *see also Valle*, 613 F.3d at 549.

2

Arevalo maintains that her second complaint sufficiently pleads deliberate

indifference based on the single-incident exception. She contends that the violation of E.R.'s constitutional rights was the "highly predictable" and "obvious consequence" of providing Officer Johnson with no training on the constitutional limits of the use of deadly force. Arevalo posits that, considering Officer Johnson's history of three excessive force reprimands and additional complaints in his eight years as a Dallas Area Rapid Transit police officer—and that Chief Fuller knew of this history—"there is no doubt that the obvious consequence of this failure to train resulted in the shooting in question." P. Br. 6.

Chief Fuller contests whether the facts demonstrate deliberate indifference. He maintains that Officer Johnson's disciplinary record was not enough evidence of "the particular officer's proclivities and history of using excessive force" for the subsequent violation of E.R.'s constitutional rights to be a highly predictable consequence. D. Br. 14. Chief Fuller also points out that Officer Johnson was an eight-year law enforcement veteran, which Chief Fuller maintains makes Officer Johnson's subsequent altercation with E.R. even less predictable, and precludes the decision not to provide Officer Johnson with deadly force training from rising to the level of deliberate indifference. Chief Fuller also contends that the facts pleaded demonstrate no causal link between a lack of deadly force training and the violation of E.R.'s constitutional rights. And he posits that, even if Arevalo has stated a claim, he is still entitled to qualified immunity because he acted reasonably under clearly established law.

The court will assume *arguendo* that Arevalo has stated a claim for supervisory liability based on the violation of a constitutional right through a failure to train, and it will focus on *Saucier*'s second prong and determine whether Arevalo has overcome Chief Fuller's entitlement to qualified immunity.

Accepting the second amended complaint's well-pleaded facts as true, and viewing them in the light most favorable to Arevalo, the record establishes the following: Chief Fuller decided not to provide deadly force training to an individual police officer with eight years of prior law enforcement experience who had been disciplined by a prior law enforcement employer on at least three different occasions for using excessive force and had been the subject of two excessive force complaints filed against him during those eight years. "The relevant inquiry" then, "is whether existing precedent placed the conclusion that [Chief Fuller] acted unreasonably in these circumstances 'beyond debate.'" *Mullenix*, 136 S.Ct. at 309 (citing *al-Kidd*, 536 U.S. at 741).

The Supreme Court has "stressed that the possibility of 'single-incident liability' based on a failure to train is 'rare,' and [the Fifth] circuit has similarly 'stressed that a single incident is usually insufficient to demonstrate deliberate indifference.'" *Walker*, 515 Fed. Appx. at 341 (quoting *Connick*, 563 U.S. at 64; *Estate of Davis*, 406 F.3d at 383). In describing the "narrow range of circumstances" where "a pattern of similar violations might not be necessary to show deliberate indifference," the Supreme Court has "posed the

hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick*, 563 U.S. at 63.

> Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights.

*Id.* at 63-64 (quoting *Brown*, 520 U.S. at 409). In such a situation, even a single constitutional rights violation due to the failure to train would be "so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.*

The Fifth Circuit "has considered single violation liability several times, and, with only one exception in some [forty] years since *Monell*, has consistently rejected application of the single incident exception." *Khansari v. City of Houston*, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (quoting *Thompson v. Connick*, 578 F.3d 293, 299 (5th Cir. 2009), *rev'd on other grounds*, 563 U.S. 51 (2011)) (internal quotation marks omitted). The sole exception, *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), demonstrates that single-incident liability requires "an abundance of evidence about the proclivities of the particular officer involved in the excessive use of force." *Hobart v. Estrada*, 582 Fed. Appx. 348, 358 (5th Cir. 2014) (citing *Valle*, 613 F.3d at 549).

In *Brown* the plaintiff alleged that the county sheriff failed to train a new police

officer because he provided him no training on the constitutional limits of the use of force. Not only did the county sheriff fail to provide the officer any training, but the officer had no prior police experience, had an extensive criminal record, and had improperly arrested numerous individuals in the few weeks he had been a police officer. *Brown*, 219 F.3d at 454-55.[9] The panel held that the failure to provide any training despite this volatile combination of "youth, inexperience, personal background, and ongoing [improper] arrest activities" amounted to deliberate indifference. *Id.* at 462. While *Brown*'s facts do not represent the only method of sustaining failure to train liability through a single incident, it indicates the high bar for clearly established deliberate indifference.

From these cases, the law clearly establishes that—for a failure to train claim—deliberate indifference can be established under the single-incident exception when the officer received a complete absence of training, when the officer's record provides abundant evidence of a proclivity to commit the specific constitutional violation in question, or when both circumstances are present.

Arevalo contends that both are present here. She first posits that the facts in this case

---

[9]The 21 year-old reserve officer only been "on the force for a matter of weeks" at the time of the incident. *Brown*, 219 F.3d at 454. He had no prior education or work experience in law enforcement. *Id.* His prior employment consisted of delivery and sales for two furniture companies. *Id.* Before joining the force, the officer had been arrested for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, and driving with a suspended license, in addition to having nine moving traffic violations. *Id.* at 454-55. He was hired while he had an outstanding arrest warrant, and in his few weeks on the job executed an "excessive number of takedown arrests" similar to, but preceding, the central incident in that case. *Id.* at 455.

mirror the Supreme Court's hypothetical. Arevalo reasons that Chief Fuller, like the hypothetical city, chose to provide Officer Johnson no training in the use of deadly force, then gave him with a weapon and placed him in a position where it was predictable that he would chase down fleeing felons. She maintains that, similar to *Brown*, Chief Fuller provided Officer Johnson no training in the task he was asked to perform.

The court disagrees with Averalo and concludes that the well-pleaded facts in this case are distinguishable from the Supreme Court's hypothetical and *Brown*. Here, Officer Johnson had eight years of prior experience as a law enforcement officer. Such a veteran, unlike the hypothetical officers, would not clearly be "lacking specific tools to handle" situations where the deadly force might be necessary without his new police department providing deadly force training. *See Connick*, 563 U.S. at 63. This fact also distinguishes Officer Johnson from the officer in *Brown*, who had no law enforcement experience when hired and had been on the force for only a few weeks. *Brown*, 219 F.3d at 455. Failing to provide deadly force training to an officer hired with eight years of prior experience was not of itself unreasonable under clearly established precedent.

But Arevalo also relies on what she maintains is abundant evidence of Officer Johnson's proclivity to misuse deadly force. She contends that this proclivity makes the subsequent violation of E.R's constitutional rights the highly obvious consequence of not providing Officer Johnson with deadly force training. The second amended complaint alleges that, at the time he was hired, Officer Johnson had been officially reprimanded on

at least three different occasions for using excessive force and had been the subject of two excessive force complaints. Arevalo alleges that these facts establish Officer Johnson's "incompetence as a law enforcement officer," in need of specific training. 2d Am. Compl. 1. The court concludes that Arevalo has not plausibly pleaded that failing to provide deadly force training to a veteran officer with this record was unreasonable under clearly established law.

Beyond *Brown*, the Fifth Circuit has declined to find deliberate indifference in several cases where the officers in question had histories generally suggestive of future misconduct—"even where a municipal employer knew of a particular officer's propensities for violence or recklessness." *Valle*, 613 F.3d at 549; *see also Estate of Davis*, 406 F.3d at 382-85 (holding there was no deliberate indifference where officer had fired weapon inappropriately and had "propensity for violence"); *Snyder*, 142 F.3d at 798 (concluding there was no deliberate indifference when officer was "dangerously stressed" and displayed "aggressive behavior"). These decisions all instead looked for evidence concerning the officer's proclivity to commit the specific constitutional violation that had occurred. One case—*Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005)—is especially instructive. In *Roberts* the officer allegedly shot and killed a driver whom he had stopped and was attempting to subdue. Although the officer had received complaints for brandishing "his firearm toward unarmed African-Americans while making routine traffic stops," the court found that the "alleged propensity for *displaying* his firearm is fundamentally different from

a propensity to *use* deadly force in the court of ordinary traffic stops." *Id.* at 294 (emphasis in original). The panel concluded that, because there was no evidence that the officer had "been involved in any cases involving the use of deadly force," there was no deliberate indifference. *Id.* at 296.

Although Officer Johnson's three prior reprimands for using excessive force make this a closer case than *Roberts*, the second amended complaint fails to overcome Chief Fuller's defense of qualified immunity. Even if the court assumes that Officer Johnson violated E.R.'s rights through the use of excessive force, the bases for excessive force allegations can vary widely, and not all involve the application of deadly force. *See, e.g.*, *Bush v. Strain*, 513 F.3d 492, 495-96 (5th Cir. 2008) (excessive force claim alleging officer pushed plaintiff's head against car window in course of arrest); *Curran v. Aleshire*, 67 F.Supp.3d 741, 745-46 (E.D. La. 2014) (excessive force claim alleging that officer "yanked [plaintiff's] student ID hanging around her neck, grabbed her, and slammed her against the auditorium wall"). If Officer Johnson's excessive force reprimands arose from the use of deadly force, then his use of such force against E.R. could be a "highly predictable consequence" of not receiving training from Chief Fuller. But if the reprimands involved the use of non-deadly force, "the evidence is far more equivocal on the question of whether there was . . . an obvious need for more or different training." *Valle*, 613 F.3d at 549. Thus without more specifics concerning the grounds for the reprimands, the court cannot say that Chief Fuller was objectively unreasonable under clearly established law for not providing

deadly force training to Officer Johnson.  Chief Fuller is therefore entitled to qualified immunity from Arevalo's § 1983 Fourth Amendment claim for failure to train.

## C

The court considers next Arevalo's hiring claim against Chief Fuller in his individual capacity.

## 1

"Deliberate indifference" to the "known or obvious consequences" of a hiring decision can amount to a constitutional violation under § 1983 on the part of the decisionmaker. *Gros v. City of Grand Prairie*, 209 F.3d 431, 433 (5th Cir. 2000) .  But "[a] showing of simple or even heightened negligence will not suffice." *Id.* (quoting *Brown*, 520 U.S. at 407) (internal quotation marks omitted); *see also Rivera v. Bonner*, 691 Fed. Appx. 234, 237 (5th Cir. 2017) (holding that demonstrating "simple or heightened negligence" in hiring choices is insufficient to establish deliberate indifference).  Instead, "deliberate indifference" exists where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights. *Gros*, 209 F.3d at 433-34 (citing *Snyder*, 142 F.3d at 797).  "'[P]redicting the consequence of a single hiring decision, even based on an inadequate assessment of a record, is far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties.'" *Rivera*, 691 Fed. Appx. at 237-38

(quoting *Brown*, 520 U.S. at 410). A plaintiff must therefore show that there was "'a strong connection between the background of the particular applicant and the specific violation alleged' such that 'the hired officer was highly likely to inflict the particular type of injury suffered." *Id.* (quoting *Gros*, 209 F.3d at 434).

2

Arevalo maintains that hiring Officer Johnson amounts to deliberate indifference as a result of his prior disciplinary record for excessive force. She contends that the violation of E.R.'s constitutional rights was the obvious consequence of hiring an individual who had been disciplined three times for excessive force and had been the subject of two excessive force complaints. Arevalo's second amended complaint alleges that Chief Fuller both hired Officer Johnson with full knowledge of his record and was "consciously indifferent to Officer Johnson's lack of qualifications." 2d Am. Compl. 7.[10]

3

The court again assumes *arguendo* that Arevalo has stated a claim for supervisory hiring liability, alleging a violation of a constitutional right, and it focuses on *Saucier*'s second prong and determines whether Arevalo has overcome Chief Fuller's entitlement to qualified immunity.

Accepting the complaint's well-pleaded facts as true, and viewing them in the light most favorable to Arevalo, the record establishes that Chief Fuller decided to hire an

---

[10]Parties are permitted to plead alternative, even inconsistent, theories of liability. *See* Rule 8(e)(2); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003).

individual police officer with eight years of prior law enforcement experience who had been disciplined by a prior law employer on at least three different occasions for using excessive force and had been the subject of two excessive force complaints filed against him during those eight years. The relevant inquiry is whether existing precedent placed beyond debate the conclusion that Chief Fuller acted unreasonably in these circumstances. *See Mullenix*, 136 S.Ct. at 309 (citing *al-Kidd*, 536 U.S. at 741).

Regarding what suffices as a "strong connection" between prior conduct and the subsequent constitutional violation, the Supreme Court's reasoning in *Brown,* 520 U.S. 397, is instructive. The Supreme Court's *Brown* decision preceded the Fifth Circuit's ruling in *Brown,* 219 F.3d 450, and addressed the same youthful, inexperienced officer with a lengthy criminal record.[11] The Court held that the county sheriff was not deliberately indifferent in hiring the troubled officer despite completely failing to investigate the officer's extensive arrest record before hiring him. *Brown*, 520 U.S. at 412. The Court concluded that—regardless of the investigation's flaws—the officer's use of excessive force was not "a plainly obvious consequence" of the hiring decision. *Id.* at 415.

Accordingly, the Fifth Circuit has held that "failing to respond to a history of 'bad or unwise acts' that 'demonstrate lack of judgment, crudity, and, perhaps illegalities' is not enough for deliberate indifference." *Livezey v. City of Malakoff*, 657 Fed. Appx. 274, 277-78 (5th Cir. 2016) (per curiam) (citing *Estate of Davis*, 406 F.3d at 383). *Rivera*, 691 Fed.

---

[11]For the officer's complete background, *see supra* § IV(B)(3).

Appx. 234, is particularly illustrative of just how strong a "strong connection" there must be. In *Rivera* the plaintiff alleged that supervisors at the Harris County Jail were deliberately indifferent in hiring an officer who later sexually assaulted the plaintiff. Although the officer in question had been arrested twice as a juvenile for "indecency with a child by sexual contact," the court held that the prior arrests did not demonstrate a strong connection with the subsequent sexual assault. *Id.* at 239. The court reasoned that crime of "indecency with a child by sexual contact" encompassed a broad range of conduct, and that on the less violent end of this range, arrests for "engaging in uncoerced sexual activity with another minor who was under the age of consent" would not necessarily "evince an obvious risk that [the officer] would engage in future sexual violence." *Id.* Because the "juvenile record provided no detail regarding the alleged offenses," the arrests alone could not be considered a strong connection and hiring the officer did not amount to deliberate indifference. *Id.*

Similar to the reasoning explained above, the court holds that hiring Officer Johnson was not unreasonable under clearly established law, despite his three excessive force reprimands and two excessive force complaints. Like the prior crime in *Rivera*, an excessive force allegation can cover a broad range of conduct, only some of which involves the application of deadly force. If Officer Johnson's reprimands for use of excessive force were due to the misuse of deadly force, there is a stronger connection between Officer Johnson's background and the subsequent shooting of E.R.. Without the details of these reprimands, however, the court cannot conclude that Chief Fuller's decision to hire Officer Johnson was objectively unreasonable. Therefore, Chief Fuller is entitled to qualified immunity from

individual liability on Arevalo's hiring claim.

V

Although Arevalo's second amended complaint fails to allege facts that would overcome Chief Fuller's qualified immunity, the court will order Arevalo to file a Rule 7(a) reply specifically to Chief Fuller's assertion of qualified immunity for both the failure to train and hiring claims.

A

"When a public official pleads the affirmative defense of qualified immunity . . . the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a). *Schultea*, 47 F.3d at 1433. The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist." *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").[12]

B

The court finds that greater detail would assist its analysis here. As the foregoing sections demonstrate, the particularity of Officer Johnson's excessive force reprimands determine whether Chief Fuller's alleged decisions—both to hire and to not provide Officer Johnson with deadly force training—were objectively reasonable under clearly established

---

[12]For the full standard to determine whether ordering a Rule 7(a) reply is appropriate, *see supra* § IV.A.

law.  Should Arevalo provide further details concerning these reprimands, it would further inform the propriety of the court's reasoning.

C

Accordingly, under the authority granted in *Schultea*, 47 F.3d at 1433, the court orders that, within 28 days of this memorandum opinion and order is filed, Arevalo file a Rule 7(a) reply that alleges with particularity all material facts that she contends establishes right to recover under § 1983 against Chief Fuller in his individual capacity for the violation of a constitutional or statutory right.  *See Reyes*, 168 F.3d at 161.  After Arevalo files her Rule 7(a) reply, Chief Fuller may file a supplemental brief in support of his motion to dismiss that addressed his qualified immunity defense.  Arevalo may file a response brief within 21 days of the dates the supplemental brief is filed.  Chief Fuller may file a reply brief within 14 days of the date the response is filed.

*    *    *

For the reasons explained, the court grants the motion to dismiss as to claims alleging municipal liability against Farmers Branch.  The court defers ruling on the claims against Chief Fuller in his individual capacity, directs that Arevalo files a Rule 7(a) reply, and permits supplemental briefing on whether Chief Fuller is entitled to qualified immunity.

**SO ORDERED**.

November 20, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE