IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EVA AREVALO, INDIVIDUALLY | § | |
| AND AS NEXT FRIEND OF E.R., | § | |
| A MINOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:16-CV-1540-D |
| | § | |
| CITY OF FARMERS BRANCH, | § | |
| TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action under 42 U.S.C. § 1983 by the mother of a teenager shot by an off-duty police officer, plaintiff has filed a court-ordered Fed R. Civ. P. 7(a) reply addressing her failure to train and hiring claims against Sid Fuller, the Chief of Police of Farmers Branch, Texas ("Chief Fuller"), in his individual capacity. Chief Fuller has supplemented his briefing for his pending motion to dismiss for failure to state a claim under Rule 12(b)(6). For the following reasons, the court grants Chief Fuller's motion to dismiss, and dismisses all claims against him with prejudice by Rule 54(b) final judgment entered today.

I

Because this case is the subject of prior memorandum opinions and orders, *see, e.g.*, *Arevalo v. City of Farmers Branch*, 2017 WL 1153230 (N.D. Tex. Mar. 28, 2017) (Fitzwater, J.) ("*Arevalo I*"); *Arevalo v. City of Farmers Branch*, 2017 WL 5569841 (N.D.

Tex. Nov. 20, 2017) (Fitzwater, J.) ("*Arevalo II*"), the court will only recount the background facts and procedural history that are pertinent to this decision.

This is a suit under § 1983 by plaintiff Eva Arevalo ("Arevalo"), individually, and on behalf of her son E_____ R _____ ("E.R."),[1] against defendants the City of Farmers Branch, Texas ("Farmers Branch"), Chief Fuller, and Farmers Branch police officer Ken Johnson ("Officer Johnson"). According to Arevalo's second amended complaint,[2] Officer Johnson observed E.R. and J____ C____ ("J.C.")[3] attempting to burglarize Officer Johnson's personal vehicle in the parking lot of the Brookhaven Apartments. After pursuing E.R. and J.C. as they fled in their car, Officer Johnson succeeded in forcing their vehicle off the road. While E.R. was in a defenseless position inside his car, Officer Johnson fired 17 shots at E.R. without provocation, hitting him in both the hand and the head.

Before being hired as a Farmers Branch police officer, Officer Johnson had been investigated three times for excessive force complaints during his eight-year stint as an

---

[1] Rule 5.2(a)(3) provides that "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party or nonparty making the filing may include only . . . the minor's initials."

[2] In deciding Chief Fuller's Rule 12(b)(6) motion, the court construes the second amended complaint in the light most favorable to Arevalo, accepts all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "On a Rule 12(b)(6) motion, a district court generally 'must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

[3] The court will also refer to the late J.C., another minor, by his initials. *See supra* note 1.

officer with Dallas Area Rapid Transit ("DART").  In his capacity as Chief of the Farmers

Branch Police Department, Chief Fuller hired Officer Johnson with actual knowledge of his

prior disciplinary record, and "provided no training to Officer Johnson on the use of deadly

force." 2d Am. Compl. 5.  Based on these alleged facts, Arevalo brings claims under § 1983

against Farmers Branch, Chief Fuller, and Officer Johnson.[4]  As to Chief Fuller in his

individual capacity, Arevalo alleges that he was deliberately indifferent to E.R.'s

constitutional rights in two ways: first, he hired Officer Johnson despite his history of using

excessive force, and, second, Chief Fuller failed to train Officer Johnson in the proper use

of deadly force.

In April 2017 Farmers Branch and Chief Fuller filed a motion under Rule 12(b)(6)

to dismiss the second amended complaint for failure to state a claim.  Chief Fuller argued,

*inter alia*, that he was entitled to qualified immunity as to the § 1983 claims that Arevalo

asserted against him in his individual capacity.  Although the court granted Farmers

---

[4]Arevalo initially brought this lawsuit not only against Farmers Branch, Chief Fuller, and Officer Johnson, but against Adara Communities, LLC ("Adara") (the manager of Brookhaven Apartments) and Brookhaven Apartments, LLC ("Brookhaven") (the owner of the Brookhaven Apartments).  Arevalo's first amended complaint included federal-law claims under § 1983 against Farmers Branch, Chief Fuller, and Officer Johnson, and state-law negligence claims against Adara and Brookhaven.  Officer Johnson, Chief Fuller, and Farmers Branch each moved to dismiss the complaint, and Adara and Brookhaven moved for judgment on the pleadings.  In *Arevalo I* the court denied Officer Johnson's motion to dismiss and allowed Arevalo's § 1983 claims for excessive force to proceed, staying the action against Officer Johnson pending his criminal trial. The court granted, however, Adara and Brookhaven's motion for judgment on the pleadings and Farmers Branch and Chief Fuller's motion to dismiss.  *Arevalo I*, 2017 WL 1153230, at *15.  The court also granted Arevalo leave to amend her federal-law claims against Farmers Branch and Chief Fuller, and she in turn filed a second amended complaint.  *Id.*

Branch's motion to dismiss Arevalo's claims for municipal liability in *Arevalo II*, it deferred ruling on Chief Fuller's qualified immunity defense. *Arevalo II*, 2017 WL 5569841, at *13. Instead, under the authority of *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc), the court ordered Arevalo to file a Rule 7(a) reply that alleged with particularity all material facts that she contended established her right to recover under § 1983 against Chief Fuller, in his individual capacity, and that overcame his qualified immunity defense. *Id.* Arevalo filed her Rule 7(a) reply, and Chief Fuller filed supplemental briefing for his motion to dismiss under Rule 12(b)(6).

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin F. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, Arevalo must allege enough facts "to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough

to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

The court will address in turn Arevalo's claims under § 1983 against Chief Fuller in his individual capacity for failure to train and for hiring an officer with Officer Johnson's history of using excessive force.  Chief Fuller contends that he is entitled to qualified immunity for both claims.

## A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity applies to state officials sued for constitutional violations under § 1983.  *See id.* at 818 n.30 (citing *Butz v. Economou*, 438

U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 285 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [she has] alleged show that the defendant['s] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?")).[5] "If no constitutional right would have been violated were the allegation established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

_____

[5]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2006). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 242.

> A right is clearly established only if the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. A case directly on point is not required; rather, the central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.

*Cole v. Carson*, 802 F.3d 752, 761 (5th Cir. 2015) (quoting *Trent v. Wade*, 776 F.3d 368, 383 (5th Cir. 2015)) (internal quotation marks and brackets omitted), *vacated on other grounds*, ___ U.S. ___, 137 S.Ct. 497 (2016). "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right.'" *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original)). "The relevant inquiry is whether existing precedent placed the conclusion that [the defendant] acted unreasonably in these circumstances 'beyond debate.'" *Mullenix v. Luna*, ___ U.S.___, 136 S.Ct. 305, 309 (2015) (per curiam) (citing *Ashcroft v. al-Kidd*, 563

U.S. 731, 741 (2011)).

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)). Although a plaintiff may comply with ordinary pleading standards in her initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a). *Schultea*, 47 F.3d at 1433. "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). The case should not be allowed to proceed unless the plaintiff can assert specific facts that, if true, would overcome the defense. *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]").

B

The court first addresses Arevalo's claim against Chief Fuller for failure to train.

1

Supervisory officials may not be held liable under § 1983 for the actions of their subordinates under any theory of vicarious liability. *Thompson*, 245 F.3d at 459 (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). When, as here, a plaintiff alleges that a supervisory official failed to train or supervise, she must prove that "(1) the supervisor either failed to supervise or train the subordinate officer, (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference" to the constitutional right allegedly violated. *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017); *see also Walker v. Upshaw*, 515 Fed. Appx. 334, 339 (5th Cir. 2013) (per curiam); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452-53 (5th Cir. 1994) (en banc).

"[D]eliberate indifference is a stringent standard of fault," requiring proof that the supervisory officer "disregarded a known or obvious consequence of his action." *Walker*, 515 Fed. Appx. at 339 (quoting *Estate of Davis*, 406 F.3d at 381) (internal quotation marks omitted). "Actions and decision by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Estate of Davis*, 406 F.3d at 381 (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d

196, 201 (5th Cir. 1999)). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson*, 245 F.3d at 459 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)). "The plaintiff must generally demonstrate at least a pattern of similar violations . . . [and] the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id.* A plaintiff can, however, "demonstrate liability based on a single incident if the constitutional violation was 'the highly predictable'" consequence of a particular failure to train. *Davidson*, 848 F.3d at 397 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989); *Connick v. Thompson*, 563 U.S. 51, 63-68 (2011)); *see also Valle*, 613 F.3d at 549.

2

Arevalo maintains that her second amended complaint and Rule 7(a) reply sufficiently plead deliberate indifference based on the single-incident exception. She contends that "[t]he shooting of E.R. by Officer Johnson was the obvious consequence of the failure of Chief Fuller to provide use of deadly force training to Officer Johnson," R. 7(a) Reply at 8; that Chief Fuller knew of two of the three internal affairs investigations for excessive force complaints that Officer Johnson had been subject to as a DART police officer[6]; that Chief Fuller knew of the information contained in Officer Johnson's background investigation, that Officer Johnson failed to disclose his full disciplinary and employment record in his Farmers

_____

[6]Arevalo alleges that records of the third incident were omitted from Farmers Branch's records with "no explanation." R. 7(a) Reply at 6.

- 10 -

Branch Police Officer application, and that Officer Johnson completed an pre-employment diagnostic test "which showed concern for property damage, misuse of vehicle, and potential for termination," *id.* at 6; that, despite this knowledge Chief Fuller provided Officer Johnson no training on the use of deadly force; and that "[b]ut for the failure to train Officer Johnson on the use of deadly force, the shooting of E.R. would not have occurred," *id.*

Chief Fuller contends that, even with the additional facts alleged in Arevalo's Rule 7(a) reply, Arevalo is unable to overcome his qualified immunity defense. He maintains that the supplemented record does not demonstrate that Officer Johnson had any proclivity to abuse the use of deadly force in the course of his eight years of law enforcement experience. Therefore, Chief Fuller posits that the use of such force against E.R. was not a highly predictable consequence of not receiving training from Chief Fuller.

3

The court will assume *arguendo* that Arevalo has stated a claim for supervisory liability based on the violation of a constitutional right through a failure to train, and it will focus on *Saucier*'s second prong: whether Arevalo has stated sufficient facts in her Rule 7(a) reply to overcome Chief Fuller's entitlement to qualified immunity.

Accepting as true the well-pleaded facts of the second amended complaint and the Rule 7(a) reply, and viewing them in the light most favorable to Arevalo, the record establishes the following: Officer Johnson had been a DART police officer for eight years before joining the Farmers Branch Police Department. He had been investigated by his prior law enforcement employer three times for excessive force complaints. These complaints

related to Officer Johnson's use of force applied in the course of three arrests. None involved the application of deadly force. At the conclusion of each investigation, DART investigators cleared Officer Johnson of any wrongdoing, and he never faced disciplinary action. After Farmers Branch hired Officer Johnson, Chief Fuller decided not to provide him deadly force training before deploying him as a Farmers Branch police officer. "The relevant inquiry" then, "is whether existing precedent placed the conclusion that [Chief Fuller] acted unreasonably in these circumstances 'beyond debate.'" *Mullenix*, 136 S.Ct. at 309 (citing *al-Kidd*, 536 U.S. at 741).

The court looks to the same failure to train standards it applied in *Arevalo II.* "[T]he possibility of 'single-incident liability' based on a failure to train is 'rare,' and [the Fifth] circuit has similarly 'stressed that a single incident is usually insufficient to demonstrate deliberate indifference.'" *Walker*, 515 Fed. Appx. at 341 (quoting *Connick*, 563 U.S. at 64; *Estate of Davis*, 406 F.3d at 383). In describing the "narrow range of circumstances" where "a pattern of similar violations might not be necessary to show deliberate indifference," the Supreme Court has "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick*, 563 U.S. at 63.

> Given the known frequency with which police attempt to arrest
> fleeing felons and the "predictability that an officer lacking
> specific tools to handle that situation will violate citizens'
> rights," the Court theorized that a city's decision not to train the

officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights.

*Id.* at 63-64 (quoting *Brown*, 520 U.S. at 409).   In such a situation, even a single constitutional rights violation due to the failure to train would be "so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id* at 64.

The Fifth Circuit "has considered single violation liability several times, and, with only one exception in some [40] years since *Monell*, has consistently rejected application of the single incident exception." *Khansari v. City of Houston*, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (quoting *Thompson v. Connick*, 578 F.3d 293, 299 (5th Cir. 2009), *rev'd on other grounds*, 563 U.S. 51 (2011)) (internal quotation marks omitted).   The sole exception, *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), demonstrates that single-incident liability requires "an abundance of evidence about the proclivities of the particular officer involved in the excessive use of force." *Hobart v. Estrada*, 582 Fed. Appx. 348, 358 (5th Cir. 2014) (citing *Valle*, 613 F.3d at 549).

In *Brown* the plaintiff alleged that the county sheriff failed to train a new police officer because he provided him no training on the constitutional limits of the use of force. Not only did the county sheriff fail to provide the officer any training, the officer also had no prior police experience, had an extensive criminal record, and had improperly arrested numerous individuals in the few weeks he had been a police officer. *Brown*, 219 F.3d at

454-55.[7]   The panel held that the failure to provide any training despite this volatile combination of "youth, inexperience, personal background, and ongoing [improper] arrest activities" amounted to deliberate indifference.  *Id.* at 462.   While *Brown*'s facts do not represent the only method of sustaining failure to train liability through a single incident, it indicates the high bar for clearly established deliberate indifference.

From these cases, the law clearly establishes that—for a failure to train claim—deliberate indifference can be established under the single-incident exception when the officer received a complete absence of training, when the officer's record provides abundant evidence of a proclivity to commit the specific constitutional violation in question, or when both circumstances are present.

Arevalo contends that her Rule 7(a) reply demonstrates that both avenues are available here.  She reasons that Chief Fuller, like the Supreme Court's hypothetical city, chose to provide Officer Johnson no training in the use of deadly force, then gave him a weapon and placed him in a position where it was predictable that he would chase down fleeing felons.  She maintains that Chief Fuller should be liable for providing Officer

---

[7]The 21 year-old reserve officer only been "on the force for a matter of weeks" at the time of the incident.  *Brown*, 219 F.3d at 454.  He had no prior education or work experience in law enforcement.  *Id.*  His prior employment consisted of delivery and sales for two furniture companies.  *Id.*  Before joining the force, the officer had been arrested for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, and driving with a suspended license, in addition to having nine moving traffic violations.  *Id.* at 454-55.  He was hired while he had an outstanding arrest warrant, and in his few weeks on the job executed an "excessive number of takedown arrests" similar to, but preceding, the central incident in that case.  *Id.* at 455.

Johnson no training in the task he was asked to perform. The court disagrees.

On the contrary, the facts alleged in her Rule 7(a) clarify that this case is distinguishable from the Supreme Court's hypothetical and *Brown*. Here, Officer Johnson had eight years of prior experience as a DART police officer. Moreover, documents attached to the Rule 7(a) reply demonstrate that in 2009—several years before Officer Johnson became a Farmers Branch police officer—he had accrued 3,152 hours of law enforcement training and had earned his peace officer license. Such a veteran, unlike the hypothetical officers, would not clearly be "lacking specific tools to handle" situations where the deadly force might be necessary without his new police department providing deadly force training. *See Connick*, 563 U.S. at 63. These facts also distinguish Officer Johnson from the officer in *Brown*, who had no law enforcement experience when hired and had been on the force for only a few weeks. *Brown*, 219 F.3d at 455. Failing to provide deadly force training to an officer hired with eight years of prior experience and thousands of hours of prior peace officer training was not of itself unreasonable under clearly established precedent.

Arevalo also contends that, regardless of Officer Johnson's prior training, there is abundant evidence of his proclivity to misuse deadly force. She maintains that this proclivity makes the subsequent violation of E.R's constitutional rights the highly obvious consequence of not providing Officer Johnson with deadly force training. The second amended complaint and Rule 7(a) reply allege that, at the time he was hired, Officer Johnson had been investigated by internal DART investigators on at least three different occasions

for excessive force complaints. The court concludes that Arevalo has not plausibly pleaded that failing to provide deadly force training to a veteran officer with this record was unreasonable under clearly established law.

As the court noted in *Arevalo II*, "[b]eyond *Brown*, the Fifth Circuit has declined to find deliberate indifference in several cases where the officers in question had histories generally suggestive of future misconduct—'even where a municipal employer knew of a particular officer's propensities for violence or recklessness.'" *Arevalo II*, 2017 WL 5569841, at *11 (quoting *Valle*, 613 F.3d at 549); *see also Estate of Davis*, 406 F.3d at 382-85 (holding there was no deliberate indifference where officer had fired weapon inappropriately and had "propensity for violence"); *Snyder*, 142 F.3d at 798 (concluding there was no deliberate indifference when officer was "dangerously stressed" and displayed "aggressive behavior"). These decisions all instead looked for evidence concerning the officer's proclivity to commit the specific constitutional violation that had occurred. *Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005) is especially instructive. In *Roberts* the officer allegedly shot and killed a driver whom he had stopped and was attempting to subdue. Although the officer had received complaints for brandishing "his firearm toward unarmed African-Americans while making routine traffic stops," the court found that the "alleged propensity for *displaying* his firearm is fundamentally different from a propensity to *use* deadly force in the court of ordinary traffic stops." *Id.* at 294 (emphasis in original). The panel concluded that, because there was no evidence that the officer had "been involved

in any cases involving the use of deadly force," there was no deliberate indifference. *Id.* at 296.

Here, Arevalo's Rule 7(a) reply still fails to overcome Chief Fuller's defense of qualified immunity. In fact, it makes the defense stronger. First, each investigation of Officer Johnson cleared him of wrongdoing. R. 7(a) Reply Ex. D at 111 ("[T]here is no indication of any policy violation or wrongdoing by [Officer Johnson]."); *id.* at 120 ("The evidence indicates that the force used by Officer Johnson was reasonable."); *id.* at 142 ("[T]here is no indication of any policy violation or wrongdoing by [Officer Johnson].") Therefore, Officer Johnson was never disciplined or found to have used excessive force in his prior law enforcement experience. Moreover, none of the excessive force complaints alleged the use of deadly force. Thus, as in *Roberts,* because there is no evidence that Officer Johnson "had ever been involved in cases involving the use of deadly force," not providing him deadly force training was not indicative of deliberate indifference. And given his prior law enforcement experience, training, and lack of a disciplinary record involving the use of deadly force, Officer Johnson's shooting of E.R. was not a "highly predictable consequence" of not receiving training from Chief Fuller. *See also Valle*, 613 F.3d at 549 (holding that if reprimands involved use of non-deadly force, "the evidence is far more equivocal on the question of whether there was . . . an obvious need for more or different training."). Thus Chief Fuller's actions were not unreasonable under clearly established precedent.

Although Arevalo acknowledges that her "Rule 7(a) reply is filed to address the issue of whether Chief Fuller is entitled to qualified immunity regarding the shooting of E.R.," R. 7(a) Reply at 2, she asserts that Chief Fuller is the "de facto" policymaker of Farmers Branch, and she cites cases regarding municipal liability under § 1983. *See* R. 7(a) Reply at 3-4; P. Resp. 3-4. Arevalo maintains that these "minimal factual allegations are sufficient to assert a municipal liability claim," and that therefore she "should be allowed to proceed to discovery on her failure to train" and other claims against Chief Fuller. P. Resp. 3-4. Arevalo confuses her standards. Whether Chief Fuller is a policymaker, and whether municipal liability can be established against Farmers Branch, are irrelevant to whether qualified immunity bars Arevalo's claims against Chief Fuller in his individual capacity.[8]

From the foregoing analysis, the court holds that Chief Fuller is entitled to qualified

---

[8]To the extent Arevalo is attempting to relitigate her municipal liability claims against Farmers Branch by asserting that Chief Fuller is a required "final policymaker," the court declines to reconsider its decision dismissing those claims. *See Arevalo II*, 2017 WL 5569841, at *13. In *Arevalo II* the court directed Arevalo to address in her Rule 7(a) reply only her claims against Chief Fuller in his individual capacity. *Id.* Regardless, Arevalo's new allegations do not appear to demonstrate that Chief Fuller is a final policymaker. A final policymaker "must [] be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83, (1986) (internal citations omitted). The Farmers Branch Charter states that, as a director of a city department, the Chief of Police "shall have supervision and control of the department subject to the City Manager." R. 7(a) Reply at 4 n.1. This arrangement mirrors the organization of the City of Dallas, whose police chief has been held not to be a final policymaker by multiple courts. *See, e.g.*, *Pinedo v. City of Dallas*, 2015 WL 221085, at *5 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.) (holding that, under Dallas City Charter, "the Chief of Police is *not* the final policymaker because he is at all times subject to the rules and supervision of the City Manager") (emphasis in original); *Mosser v. Haney*, 2005 WL 1421440, at *4 (N.D. Tex. June 17, 2005) (Boyle, J.) (same).

immunity from Arevalo's § 1983 claim for failure to train Officer Johnson.

C

The court considers next Arevalo's hiring claim against Chief Fuller in his individual capacity.

1

"Deliberate indifference" to the "known or obvious consequences" of a hiring decision can amount to a constitutional violation under § 1983 on the part of the decisionmaker. *Gros v. City of Grand Prairie*, 209 F.3d 431, 433 (5th Cir. 2000). But "[a] showing of simple or even heightened negligence will not suffice." *Id.* (quoting *Brown*, 520 U.S. at 407) (internal quotation marks omitted); *see also Rivera v. Bonner*, 691 Fed. Appx. 234, 237 (5th Cir. 2017) (holding that demonstrating "simple or heightened negligence" in hiring choices is insufficient to establish deliberate indifference). Instead, "deliberate indifference" exists where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights. *Gros*, 209 F.3d at 433-34 (citing *Snyder*, 142 F.3d at 797). "'[P]redicting the consequence of a single hiring decision, even based on an inadequate assessment of a record, is far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties.'" *Rivera*, 691 Fed. Appx. at 237-38 (quoting *Brown*, 520 U.S. at 410). A plaintiff must therefore show that there was "'a strong

connection between the background of the particular applicant and the specific violation alleged' such that 'the hired officer was highly likely to inflict the particular type of injury suffered." *Id.* (quoting *Gros*, 209 F.3d at 434).

2

Arevalo maintains that hiring Officer Johnson amounts to deliberate indifference as a result of his three prior internal investigations for excessive force and the indications of his dishonesty and irresponsibility. She contends that the violation of E.R.'s constitutional rights was the obvious consequence of hiring an individual who had been investigated three times for excessive force, had failed to disclose requested information in the course of the hiring process, had been rejected after applying for positions in other police offices, and had been flagged as a potential concern by a diagnostic screening test. Arevalo alleges that "[t]he facts of Officer Johnson's background lead to the inescapable conclusion that this officer was highly likely to inflict the particular injury suffered by E.R., which was consciously ignored by Chief Fuller when he hired Johnson." R. 7(a) Reply at 7.

Chief Fuller maintains that there was no strong connection between Officer Johnson's background and the shooting of E.R. Therefore, he contends the decision to hire Officer Johnson was not unreasonable under established precedent.

3

The court again assumes *arguendo* that Arevalo has stated a claim for supervisory hiring liability, alleging a violation of a constitutional right, and it focuses on *Saucier*'s

second prong: whether Arevalo has overcome Chief Fuller's entitlement to qualified immunity.

Accepting the second amended complaint's and the Rule 7(a) reply's well-pleaded facts as true, and viewing them in the light most favorable to Arevalo, the record establishes the following: Officer Johnson had been a DART police officer for eight years before joining the Farmers Branch Police Department. He had been investigated by his prior law enforcement employer three times for excessive force complaints. These complaints related to Officer Johnson's use of force applied in the course of three arrests. None involved the application of deadly force. At the conclusion of each investigation, DART investigators cleared Officer Johnson of any wrongdoing, and he never faced disciplinary action. When Officer Johnson later applied to the Farmers Branch Police Department, he had already been rejected by other police departments, his application contained disclosure discrepancies, and a pre-employment diagnostic test "showed concern for property damage, misuse of vehicle, and potential for termination." R. 7(a) Reply at 6. Chief Fuller decided nevertheless to hire Officer Johnson as a Farmers Branch police officer. "The relevant inquiry" then, "is whether existing precedent placed the conclusion that [Chief Fuller] acted unreasonably in these circumstances 'beyond debate.'" *Mullenix*, 136 S.Ct. at 309 (citing *al-Kidd*, 536 U.S. at 741).

The court returns to the same hiring claim standards it considered in *Arevalo II*. Regarding what suffices as a "strong connection" between prior conduct and the subsequent

constitutional violation, the Supreme Court's reasoning in *Brown,* 520 U.S. 397, is instructive. The Supreme Court's *Brown* decision preceded the Fifth Circuit's ruling in *Brown,* 219 F.3d 450, and addressed the same youthful, inexperienced officer with a lengthy criminal record.[9] The Court held that the county sheriff was *not* deliberately indifferent in hiring the troubled officer despite completely failing to investigate the officer's extensive arrest record before hiring him. *Brown*, 520 U.S. at 412. The Court concluded that—regardless of the investigation's flaws—the officer's use of excessive force was not "a plainly obvious consequence" of the hiring decision. *Id.* at 415.

Accordingly, the Fifth Circuit has held that "failing to respond to a history of 'bad or unwise acts' that 'demonstrate lack of judgment, crudity, and, perhaps illegalities' is not enough for deliberate indifference." *Livezey v. City of Malakoff*, 657 Fed. Appx. 274, 277-78 (5th Cir. 2016) (per curiam) (citing *Estate of Davis*, 406 F.3d at 383). *Rivera*, 691 Fed. Appx. 234, is particularly illustrative of just how strong a "strong connection" must be. In *Rivera* the plaintiff alleged that supervisors at the Harris County Jail were deliberately indifferent in hiring an officer who later sexually assaulted the plaintiff. Although the officer in question had been arrested twice as a juvenile for "indecency with a child by sexual contact," the court held that the prior arrests did not demonstrate a strong connection with the subsequent sexual assault. *Id.* at 239. The court reasoned that crime of "indecency with a child by sexual contact" encompassed a broad range of conduct, and that on the less violent

---

[9]For the officer's complete background, see *supra* § III(B)(3).

end of this range, arrests for "engaging in uncoerced sexual activity with another minor who was under the age of consent" would not necessarily "evince an obvious risk that [the officer] would engage in future sexual violence." *Id.* Because the "juvenile record provided no detail regarding the alleged offenses," the arrests alone could not be considered a strong connection and hiring the officer did not amount to deliberate indifference. *Id.*

The court holds that hiring Officer Johnson was not unreasonable under clearly established law, despite his prior conduct. The facts in Arevalo's Rule 7(a) reply are dispositive. Again, Officer Johnson had received no prior reprimands for the use of excessive force. Each of the three internal investigations of excessive force allegations cleared him of wrongdoing. Moreover, none of the allegations involved the use of deadly force. Therefore, Officer Johnson's prior record as a DART police officer showed no "strong connection" to his shooting of E.R. Nor do any of the other facts demonstrate such a connection. The documents attached to the R. 7(a) reply indicate that Officer Johnson's failures to disclose requested information were "a result of miscommunication," and that he was cooperative in disclosing the missing information once the Farmers Branch Police Department pointed out these discrepancies. R. 7(a) Reply Ex. C at 7. Similarly, the diagnostic test's indication that Officer Johnson might have been a risk for damaging property, misusing a vehicle, termination, or resigning does not suggest any proclivity for the unwarranted use of deadly force. Under these facts, the shooting of E.R. was not a "plainly obvious consequence" of hiring Officer Johnson, and Chief Fuller's actions were

not unreasonable according to clearly established precedent.

Arevalo maintains that the facts in her Rule 7(a) reply should permit her to engage in limited discovery. But even under the precedent she cites, a litigant is only entitled to such discovery "if the court remains 'unable to rule on the immunity defense without further clarification of the facts[.]'" *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)). As the court's analysis and reasoning demonstrate, the facts here present no such ambiguity. The court therefore holds that Chief Fuller is entitled to qualified immunity from individual liability on Arevalo's hiring claim.

*       *       *

For the reasons explained, the court holds that Chief Fuller's qualified immunity defense bars Arevalo's failure to train and hiring claims against him in his individual capacity, grants Chief Fuller's motion to dismiss, and dismisses all claims against him in his individual capacity with prejudice by Rule 54(b) final judgment filed today.

**SO ORDERED**.

April 13, 2018.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE